**Jeff COMPTON, Trustee of the Liquidating Trust of Winn's Stores, Inc., Appellant,**

v.

**TEXACO, INC., Appellee.**

**No. 14–99–01178–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 5, 2001.

Don Fogel, Houston, for appellants.

Frank Hill, Debora Alsup, Austin, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and EDELMAN.

## OPINION

FOWLER, Justice.

In a case of first impression in this state, we must decide whether the Texas Solid Waste Disposal Act bars appellant Compton's claims for contribution and indemnity against appellee Texaco, Inc. ("Texaco"). We must also decide whether Compton may assert a claim against Texaco for non-contractual, common law indemnity. The trial court entered summary judgment in Texaco's favor dismissing Compton's claims. For the reasons set out below, we affirm the trial court's judgment.

### Background

From 1929 to 1949, Texaco operated a refinery on approximately 40.6 acres of land near San Antonio, Texas (the "Site"). WSI Properties, Inc. purportedly pur-

chased the property from Texaco "as is" in 1977. WSI, in turn, sold the Site to Winn's Stores, Inc. for use as a corporate headquarters and distribution center. Environmental contamination was evidently discovered for the first time at the Site during the construction of Winn's corporate headquarters. Later, it was also learned that underground petroleum storage tanks installed by WSI for use at Winn's distribution center had leaked, causing additional contamination at the Site. Both Texaco and Winn's were ultimately identified by the Texas Natural Resource Conservation Commission ("TNRCC") as potentially responsible parties or "PRP's" for the Site's environmental contamination.

Winn's filed for bankruptcy in 1994 and, as part of that proceeding, the Liquidating Trust of Winn's Stores, Inc. was formed with Jeff Compton as its trustee. As trustee, Compton was responsible for liquidating Winn's assets, including the Site. Compton's efforts to sell the Site were complicated by the property's environmental contamination. Appellant Jeff Compton, Trustee of the Liquidating Trust of Winn's Stores, Inc. ("Compton"), submitted various proposals to the TNRCC in an effort to remediate the contaminated property through the State's Volunteer Cleanup Program ("VCP"), but he was unable to negotiate a cost-effective plan for doing so. Therefore, instead of remediating the Site directly, Compton elected to pay a sum of money to a general remediation fund administered by the State and the TNRCC in exchange for a release from future environmental liability. To make this payment, Compton sold the Site to two separate companies, Sideoats, L.L.C. and LGC Land, L.L.C. Under the terms of these sales, Sideoats and LGC agreed to pay a total of $1.25 million to the State's general remediation fund. Sideoats and LGC then assigned to Compton any rights they had

to recover the $1.25 million from Texaco. Compton also paid $250,000 to the remediation fund and, in return, the State released Compton, LGC, and Sideoats from environmental liability in connection with the Site.

Later Texaco also entered into a settlement agreement with the State ("Settlement Agreement") and agreed to be responsible for remediating the Site. The Settlement Agreement expressly provides that it resolves all of Texaco's liability to the State for the Site. The Settlement Agreement also states that its effect is to bar third party claims against Texaco for cost recovery, contribution, or indemnity under § 344(a) of the Texas Solid Waste Disposal Act.

After he settled with the State, Compton brought suit against Texaco for common law indemnity as well as statutory contribution under § 344(a) of the Texas Solid Waste Disposal Act. In particular, Compton sought to recover the costs necessary to discover the full extent of the environmental damage allegedly caused by Texaco as well as the $1.5 million in payments to the State. Texaco filed a motion for summary judgment, arguing that Compton is not entitled to contribution or indemnity as a matter of law because the Texas Solid Waste Disposal Act protects parties who settle with the State from those claims. Texaco also argued that Compton's common law indemnity claims fail as a matter of law on several grounds. The trial court granted Texaco's motion and ordered that Compton take nothing.

## Issues Presented

Compton appeals and contends that the trial court erred in granting summary judgment. Compton presents the following issues for review: (1) whether Compton is entitled to common law indemnity;

(2) whether Compton is entitled to statutory contribution under the Texas Solid Waste Disposal Act; (3) whether Texaco's settlement with the State resolves all of Texaco's liability to the State for the Site so as to bar Compton's claims under § 277 of the Texas Solid Waste Disposal Act; and (4) whether the Texas Solid Waste Disposal Act precludes claims for common law indemnity under these circumstances.

### Standards of Review

 A party moving for summary judgment must establish its right to summary judgment on the issues presented to the trial court by conclusively proving all elements of the movant's claim or defense as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Havlen v. McDougall,* 22 S.W.3d 343, 345 (Tex.2000). To be entitled to summary judgment, a defendant whose motion is based on an affirmative defense must conclusively establish that defense. *Id.* On appeal, the movant must still show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* In this case, we must interpret and apply the Texas Solid Waste Disposal Act. In general, matters of statutory construction are questions of law for the court to decide rather than issues of fact. *Id.* Because the parties do not dispute the material facts, this is a proper case for summary judgment. *Id.*

### What is the Effect of Texaco's Settlement Under the Texas Solid Waste Disposal Act?

 A threshold issue in this case is whether, as Texaco contends, its settlement with the State bars Compton's claims for statutory contribution under the Texas Solid Waste Disposal Act. Compton seeks to recover his costs under the contribution scheme set out in § 344(a) of the Texas Solid Waste Disposal Act. *See* TEX.HEALTH & SAFETY CODE ANN. § 361.344(a)(Vernon Supp.2000). That statute provides, in pertinent part, as follows:

> A person who conducts a removal or remedial action that is approved by the commission and is necessary to address a release or threatened release may bring suit in a district court to recover the reasonable and necessary costs of that action and other costs as the court, in its discretion, considers reasonable. This right is in addition to the right to file an action for contribution, indemnity, or both in an appeal proceeding or in an action brought by the attorney general.

TEX.HEALTH & SAFETY CODE ANN. § 361.344(a)(Vernon Supp.2000).

Texaco insists that it is entitled to protection from Compton's claims because Texaco has entered into a settlement with the State that has resolved all of Texaco's liability for the Site. The Settlement Agreement reads, in pertinent part, as follows:

**7. RELEASES AND COVENANTS NOT TO SUE.**

 a. In consideration of Texaco's agreement to conduct investigative and remedial activities at the Site and subject only to the EXCEPTIONS contained in paragraph 8 below, the TNRCC hereby RELEASES Texaco, its present and former officers, directors, attorneys, employees, agents, successors, and assigns, for all matters stated in paragraph 6 above.

 b. In consideration of Texaco's agreement to conduct investigative and remedial activities at the Site and subject only to the EXCEPTIONS contained in paragraph 8 below, the TNRCC hereby COVENANTS NOT TO SUE

or take administrative action against Texaco, its present and former officers, directors, attorneys, employees, agents, successors, and assigns, for all matters stated in paragraph 6 above, provided however, that this COVENANT NOT TO SUE shall take effect upon issuance of a final Certificate of Completion by the VCP.

. . .

**8. EXCEPTIONS.** The following Exceptions apply to the Releases and Covenants Not to Sue in paragraph 7 above:

 a. The Release and Covenant Not to Sue shall become Void if:

 (i) Previously unknown or undetected conditions related to Texaco's prior ownership or operations of Texaco arise or are discovered at the Site after the completion of the remediation, such conditions indicate that the remediation undertaken by Texaco is not protective of human health and the environment, and Texaco refuses to address the conditions under the VCP; or

 (ii) The TNRCC receives additional information, which was not available prior to the completion of the remediation, concerning scientific determinations on which the remediation was premised (for example: health effects associated with levels of exposure, toxicity of hazardous substances, and the adequacy of remedial technologies employed in eliminating the endangerment to the public health), and this additional information indicates that Site conditions following remediation are not protective of human health and the environment, and Texaco refuses to address the conditions under the VCP.

 b. The Release shall become Voidable as to Texaco if Texaco breaches this Agreement by failing to perform its obligations under subsections 3a.–3e. of this Agreement. A deviation from an approved work plan or schedule attributable to a denial of access to the Property by its current owner(s) in breach of or due to the restrictions on access contained in the Existing Access Agreements or attributable to a good faith invocation of Dispute Resolution shall not constitute a breach of this Agreement.

 c. If both the Release and the Covenant Not to Sue become Void as to Texaco, the TNRCC shall have the right to seek such relief against Texaco with respect to this Agreement as the law may allow.

. . .

**9. EFFECT OF SETTLEMENT.** The TNRCC, acting on behalf of the State, acknowledges and agrees that this Agreement constitutes a settlement between the State and Texaco pursuant to the [Texas Solid Waste Disposal] Act and particularly under § 361.277 of the Act. The TNRCC, acting on behalf of the State, acknowledges and agrees that the State has resolved all liability of Texaco to the State for the Site, and that Texaco is hereby released from all liability under § 361.344(a) of the Act to any person or entity described by Section 361.344(a) of the Act for cost recovery, contribution, or indemnity.

Pursuant to Section 361.277(b) of the Act, Texaco is entitled to and

granted protection from any existing or future claims for cost recovery, contribution and/or indemnity as provided in Section 361.344 of the Act. To the extent allowed by law, pursuant to 42 U.S.C. § 9613(f)(2), Texaco is entitled to protection from any existing or future claims for cost recovery, contribution, and/or indemnity as provided in 42 U.S.C. §§ 9607 and 9613. The TNRCC acknowledges and agrees that Texaco's satisfaction of its obligations under this Agreement culminating in issuance of a conditional or final Certificate of Completion for the Site, or for a portion of the Site, constitutes a removal or remedial action that is approved by the TNRCC and which was necessary to address a release or threatened release pursuant to Section 361.344(a) of the Act.

Texaco emphasizes the language in Section 9 of the Settlement Agreement. Texaco contends that, because the TNRCC has approved and entered into the Settlement Agreement, § 277(b) of the Texas Solid Waste Disposal Act bars Compton's claims against Texaco. *See* TEX.HEALTH & SAFETY CODE ANN. § 361.277(b) (Vernon Supp.2000). Under that section, "[a] person who enters a settlement agreement with the state that resolves all liability of the person to the state for a site subject to Subchapter F is released from liability to a person described by Section 361.344(a) for cost recovery, contribution, or indemnity under Section 361.344 regarding a matter addressed in the settlement agreement." TEX.HEALTH & SAFETY CODE ANN. § 361.277(b) (Vernon Supp.2000). This

statute was apparently patterned after the contribution protection provision found in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601, *et seq.* ("CERCLA"). *See* 42 U.S.C. § 9613(f)(2) (1992).[1]

Texaco argues that Compton's claims are barred as a matter of law under the plain language of § 277(b) because the Settlement Agreement resolves all of Texaco's liability to the State for the Site. Compton points out that the State's covenant not to sue does not take effect until the Volunteer Cleanup Program issues the final Certificate of Completion. Compton also points out that the release and covenant not to sue given by the State are subject to conditions subsequent under Section 8 of the Settlement Agreement. Compton argues that, because of these conditions, the Settlement Agreement does not resolve all of Texaco's liability for the Site. Therefore, Compton asserts that § 277(b) does not apply.

▇▇ The parties have not cited and this court has not found any cases dealing with the meaning and application of the phrase "resolves all liability" in § 277(b). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See National Liability and Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). We presume that the legislature intended the plain meaning of its words. *Id.* If possible, we must ascertain the legislature's intent from the language it used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* When interpreting

1. The contribution protection provision for settling parties found in CERCLA provides as follows:

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9613(f)(2) (1992).

a statute, we consider the entire act, its nature and object, and the consequences that would follow from each construction. *Atascosa County v. Atascosa County Appraisal Dist.*, 990 S.W.2d 255, 258 (Tex. 1999). We must reject any statutory interpretation that defeats the legislative purpose. *Id.*

The language of § 277(b) is unambiguous. If a settlement agreement resolves all of the settling party's liability to the State for a site, then § 277(b) bars all claims against the settling party under § 344(a) regarding matters addressed in the settlement agreement. The word "resolve," in the context of liability, means "to reach a decision about: SETTLE" or "to find an answer to: make clear or certain: SOLVE, UNRIDDLE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1933 (1st ed.1993). Applying § 277(b) to the Settlement Agreement, we find that the conditional nature of the covenant not to sue is not determinative, especially in light of the immediate effectiveness of the State's release of Texaco under Section 7 of the Settlement Agreement. The release and covenant not to sue are subject to conditions subsequent in Section 8 that might void the release and covenant not to sue in the future. These conditions subsequent, however, do not change the fact that the Settlement Agreement settles and makes clear all of Texaco's liability to the State for the Site. Therefore, § 277(b) bars Compton from asserting his claims against Texaco.

Although this is an issue of first impression under § 277(b), federal cases under the analogous provision of CERCLA support the same result. *United States v. Colorado & Eastern R.R. Co.*, 50 F.3d 1530, 1538 (10th Cir.1995) (holding that, under 42 U.S.C. § 9613(f)(2), contribution protection is conferred at the time of set-

tlement, even if the EPA may later rescind the settlement agreement for nonperformance); *accord Dravo Corp. v. Zuber*, 13 F.3d 1222, 1226 (8th Cir.1994). This interpretation of § 277(b) gives effect to the unambiguous language of the statute and comports with the statutory purpose of encouraging settlements and protecting parties from claims under § 344(a) if they settle all of their liability to the State for a site. If the release and covenant not to sue under the Settlement Agreement are voided in the future due to the occurrence of one of the conditions subsequent, then the § 277(b) bar no longer applies. *See Colorado & Eastern R.R. Co.*, 50 F.3d at 1538; *Dravo Corp.*, 13 F.3d at 1226. Until this occurs, however, Compton's claims are barred under the unambiguous language of the Settlement Agreement and of § 277(b).

We reject Compton's argument that Texaco's liability will not be resolved until Texaco has fully performed its obligations under the Settlement Agreement. This argument contradicts the plain meaning of the Settlement Agreement and of § 277(b). It is understandable that the TNRCC may want its releases of PRP's to contain conditions subsequent such as those found in Section 8 of the Settlement Agreement. Nonetheless, these conditions subsequent do not prevent settlement agreements containing this language from resolving all of the liability of the PRP to the State for the site in question. If we accepted Compton's interpretation, many settling parties would likely be deprived of the protections of § 277(b). This result would remove an important incentive to settle environmental liability with the State, contrary to the language and purpose of § 277(b). Because § 277(b) prevents Compton from asserting his claims against Texaco, we overrule Compton's second and third issues.[2]

**2.** We asked the parties to brief the persuasive

effect, if any, of the following CERCLA cases

### Can Compton Assert a Claim for Common Law Indemnity?

■ Compton also brings a claim for common law indemnity. The Texas Supreme Court has explained that the comparative negligence statute "has abolished the common law doctrine of indemnity between joint tortfeasors even though the statute does not expressly mention that doctrine." *Aviation Office of America, Inc. v. Alexander & Alexander of Texas, Inc.*, 751 S.W.2d 179, 180 (Tex.1988). Thus, the "only remaining vestiges of common law indemnity involve purely vicarious liability or the innocent product retailer situation." *Id.*[3] Compton satisfies neither of these criteria.

■ Compton styles himself as an "innocent retailer" because, unlike Winn's, he is not a party "with potential liability for something [he] did." However, Compton admits that underground petroleum storage tanks installed by Winn's predecessor, WSI, contributed to contamination of the Site. Compton further concedes that, as a trustee, he is an owner "in the chain of title of contaminated land." While they may not have caused any environmental pollution themselves, nevertheless, as owners, Sideoats, L.L.C., LGC Land, L.L.C., and Compton are all strictly liable for the contaminated property as a matter of law. *See* TEX.HEALTH & SAFETY CODE ANN. § 361.271(a) (Vernon Supp.2000) (providing that a party is "responsible for solid waste if the person: (i) is any owner ... of a solid waste facility"). The only defense to such strict liability is provided for those "innocent purchasers" who take title without knowledge of contamination. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.275 (Vernon 1992). Compton does not allege or show that he can escape strict liability under this exception. Therefore, Compton's argument that Winn's environmental liabilities cannot be imputed to him are without merit under these circumstances.

The liability for which Compton seeks indemnity is direct liability based on ownership of the Site. It is not liability in which Compton or his assignors are held vicariously liable for the conduct of Texaco. Compton is not an innocent product retailer who would be entitled to assert a claim against the manufacturer of a defective product for common law indemnity. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 432 (Tex.1984). Compton asserts that he is entitled to common law indemnity because he is an innocent landowner. The Supreme Court has stated that non-contractual, common law indemnity is only available to a person held vicariously liable and to an innocent product retailer. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 819–20 (Tex.1984). Having found that Compton is in neither of these two categories, we cannot create a new category of common law indemnity in violation of Supreme Court precedent. *See id.* Creating a right of common law

---

on our decision in this case: *United States v. Charter Intern. Oil Co.*, 83 F.3d 510 (1st Cir. 1996); *United States v. Colorado & Eastern R.R. Co.*, 50 F.3d 1530 (10th Cir.1995); *Advanced Technology Corp. v. Eliskim, Inc.*, 87 F.Supp .2d 780 (N.D.Ohio 2000). After reviewing the parties' briefing and the cases in question, we conclude that these cases are not on point because they deal with the issue of whether the claims in those actions were matters addressed in the settlement. This issue has not.been raised by Compton in this case.

In any event, the Settlement Agreement, unlike the settlements in these three cases, addresses all civil liability relating to the Site.

**3.** The common law indemnity in the innocent product retailer situation has been codified at TEX.CIV.PRAC. & REM.CODE ANN. § 82.002 (Vernon 1997). This statutory indmenity "is in addition to any duty to indemnify established by law, contract, or otherwise." TEX.CIV.PRAC. & REM.CODE ANN. § 82.002(e) (Vernon 1997).

indemnity in favor of Compton in this case would also be contrary to the statutory contribution scheme under TEX.HEALTH & SAFETY CODE ANN. § 361.344(a) (Vernon Supp.2000). Compton's claim for common law indemnity fails as a matter of law, and the trial court properly entered summary judgment dismissing this claim. Therefore, we overrule Compton's first and fourth issues. Having overruled Compton's four issues, we affirm the trial court's judgment.