Affirmed and Memorandum Opinion
filed March 29, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00901-CV



F & F
Ranch, a Partnership, Appellant 

v.

Occidental
Chemical Corporation, Dow Chemical Company, Elementis Chemicals, Inc., Monsanto
Company, and Aventis Pharmaceuticals, Inc., Appellees



On Appeal from
the 149th District Court

Brazoria County, Texas

Trial Court
Cause No. 47219



 

MEMORANDUM OPINION 

In this appeal, F & F Ranch sought
indemnification from appellees for a judgment against it in an underlying
lawsuit.  Appellees moved for summary judgment on the grounds that, inter
alia, (a) F & F Ranch was not entitled to statutory indemnification
because it is not a “seller” as defined by the strict products liability
statutory scheme and (b) F & F Ranch was not entitled to common law
indemnification because (1) there was no determination that appellees were
liable to the plaintiff in the underlying suit, and (2) F & F Ranch was not
an “innocent retailer.”  We affirm the summary judgments granted in favor of
the appellees.

BACKGROUND

This appeal arises from a lawsuit originally filed by
Shane Bowers in the fall of 1992, styled Bowers v. The Dow Chemical Company,
No. 92-G-3022 in the 239th District Court of Brazoria County.  Bowers alleged
that, while working on certain properties owned by F & F Ranch (the
“Ranch”),[1]
one of the defendants in the suit, he was exposed to the chemicals 2-4 D and 2-4-5
T (collectively, the “chemicals”), which caused him to contract non-Hodgkins
lymphoma.  The Ranch apparently owned or operated at least two Southern Pine
tree-farming properties.  At these properties, the chemicals were used to
control the growth of undesired hard wood trees.  Bowers sued numerous chemical
companies for products liability and sued the Ranch for negligence and gross
negligence.  The suit was subsequently dismissed for want of prosecution in 1994
but was reinstated when Bowers claimed unintentional mistake.  In 1995, several
defendants were granted summary judgment, including Dow Chemical Company
(“Dow”), Occidental Chemical Corporation (“Occidental”),[2] Elementis
Chemicals, Inc. (“Elementis”),[3]
and Monsanto Company (“Monsanto”).[4] 
Various amended petitions were filed, adding and removing defendants.  

When the case was again dismissed for want of
prosecution in 2001, Bowers filed a bill of review.  The trial court heard the
bill of review in 2002, and the case was reinstated against the Ranch only.  The
new petition included claims against the Ranch for strict products liability,
breach of warranty, negligence, and gross negligence.  Because Bowers had died
during the time the case was inactive, the case was restyled with the executor
of his estate as the plaintiff:  Stirman v. F & F Ranch, a Partnership,
No. 19197*JG02 (the “underlying action”).  In 2003, the Ranch sought and was
granted leave to file a third-party petition against, as is relevant here,
Harcos Chemicals, Inc., which was a predecessor-in-interest to Elementis;
Monsanto; and Am Chem, Inc., an alleged predecessor-in-interest to Aventis
Pharmaceuticals (“Aventis”).  However, on Monsanto’s motion for
reconsideration, in May 2003, the trial court struck the Ranch’s third-party
petition, dismissed these third-party defendants, and precluded the Ranch from
filing any additional third-party petitions.  The case proceeded with the Ranch
as the only defendant.  

After a two-day bench trial, on July 6, 2006, the
trial court signed a judgment submitted by the parties.  This judgment provides,
in pertinent part:

On May 30, 2006, the case was called to trial.  Over a
two-day bench trial, counsel presented evidence in each party’s case-in-chief,
including fact and expert witness testimony, called both live and by
deposition.  Before the Court rendered its ruling in this case, Plaintiffs and
Defendant tendered to this court this Final Judgment.  Defendant is liable to
plaintiffs for compensatory damages, based solely upon the causes of action
alleged in Paragraph III B of Plaintiffs’ Amended Original Petition, for strict
products liability, due to Mr. Bower’s exposure to the chemicals 2 4 D and 2
4-5 T while working on the Defendant’s ranch in Cloudy, Oklahoma.  Defendant is
liable to Plaintiffs for compensatory damages in the amount of $3,250,000.00,
together with post-judgment interest, continuing to accrue on the amount of the
Judgment at the highest lawful rate.[5]

Based on this judgment, the Ranch filed suit against Maxus
Energy, Dow, Elementis, TH Agriculture and Nutrition, L.L.C., Monsanto,
Evergreen Helicopters, Inc., Weyerhauser Company, Aventis, and Forestry
Suppliers, Inc. on April 24, 2008, seeking indemnification for $3.25 million
and post-judgment interest.  The Ranch filed an amended petition on June 2,
2009, in which it (1) dropped Maxus Energy from its petition, (2) added
Occidental to the claim, and (3) indicated that it had non-suited its claims
against Weyerhauser Company and Forestry Suppliers, Inc.  

Monsanto, Elementis, Occidental, Dow and Aventis
responded by generally denying the allegations and subsequently filed
summary-judgment motions.  In their motions, they argued, inter alia, that
the Ranch is not entitled to (a) statutory indemnity because it is not a
“seller” as defined by Chapter 82 of the Civil Practice & Remedies Code,
governing products-liability actions, or (b) common-law indemnity because the
Ranch is not an “innocent retailer,” and none of the appellees has admitted
liability or been adjudicated liable in the underlying action. [6]  On July
13, 2009, the trial court granted summary judgments in favor of all the appellees. 
On that same date, the Ranch non-suited Evergreen Helicopters, Inc.  These
summary judgments became final on September 17, 2009, when the last defendant,
TH Agriculture and Nutrition, L.L.C., was severed from this case.  This appeal
timely followed.

ANALYSIS

A.        Standard
of Review

We review a trial court’s summary judgment de novo. 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  In
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, indulging every reasonable inference, and we resolve any doubts in
the nonmovant’s favor.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
549 (Tex. 1985).  Where, as here, the trial court grants the judgment without
specifying the grounds, we affirm the summary judgment if any of the grounds
presented is meritorious.  FM Props. Operating Co. v. City of Austin, 22
S.W.3d 868, 872B73
(Tex. 2000).  

A traditional summary judgment is proper when the
defendant either negates at least one element of each of the plaintiff’s
theories of recovery or pleads and conclusively establishes each element of an
affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 911 (Tex. 1997); Cullins v. Foster, 171 S.W.3d 521, 530 (Tex.
App.—Houston [14th Dist.] 2005, pet. denied).  When the defendant has carried
its summary judgment burden, the burden shifts to the nonmovant to raise a
material fact issue precluding summary judgment.  Va. Indonesia Co. v.
Harris County Appraisal Dist., 910 S.W.2d 905, 907 (Tex. 1995).  Finally,
the nonmovant must expressly present to the trial court any ground that would
defeat the movant’s right to summary judgment by filing a written answer or
response to the motion; the nonmovant may not later assign any new ground as
error on appeal, other than a complaint that the evidence is legally
insufficient to support the summary judgment.  See City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678–79 (Tex. 1979); Argovitz v. Argovitz,
Nos. 14-07-00206-CV, 14-07-00396-CV, 2008 WL 5131843, at *8 (Tex. App.—Houston
[14th Dist.] Dec. 9, 2008, pet. denied) (mem. op.). 

B.        Indemnification

            1.         Statutory
Indemnification

Chapter 82 of the Texas Civil Practice & Remedies
Code governs a manufacturer’s indemnity obligations arising from a “products
liability action”:

A manufacturer shall indemnify and hold harmless a seller
against loss arising out of a products liability action, except for any loss
caused by the seller’s negligence, intentional misconduct, or other act or
omissions, such as negligently modifying or altering the product, for which the
seller is independently liable.  

Tex. Civ. Prac. & Rem.
Code § 82.001(2) (West 2011).  This chapter defines a “seller” as

A person who is engaged in the business of distributing or
otherwise placing, for any commercial purpose, in the stream of commerce for
use or consumption a product or any component part thereof.

Id. § 82.001(3).  A
“seller” is one who “commercially distributes a product.”  SSP Partners v.
Gladstrong Invs. (USA) Corp., 275 S.W.3d 444, 449 (Tex. 2008).  The
legislature drafted Chapter 82 to provide indemnity for all retailers of
a defective product.  See New Tex. Auto Auction Servs., L.P. v. Gomez de
Hernandez, 249 S.W.3d 400, 405 (Tex. 2008).  

            2.         Common-Law
Indemnification

The comparative-negligence statute essentially “has
abolished the common law doctrine of indemnity between joint tortfeasors even
though the statute does not expressly mention that doctrine.”  Aviation
Office of Am., Inc. v. Alexander & Alexander of Tex., Inc., 751 S.W.2d
179, 180 (Tex. 1988) (per curiam); see also Compton v. Texaco, Inc., 42
S.W.3d 354, 361 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  An entity
is entitled to common-law indemnity for products liability only if its
liability is entirely vicarious or if it qualifies as an “innocent product
retailer” involved in the chain of distribution.  See Aviation Office of Am.,
751 S.W.2d at 180.  Further, common-law indemnity requires an adjudication of
the manufacturer’s liability or an admission of liability by the manufacturer. 
See Gen. Motors Corp. v. Hudiburg Chevrolet, Inc., 199 S.W.3d 249, 255
(Tex. 2006).  (“The indemnitor must be liable or potentially liable for the
product defect, and his liability must be adjudicated or admitted.”  (emphasis
added)).  

C.        Application

1.         “Equitable”
Indemnity

In its first issue, the Ranch contends that “equity”
requires that it be indemnified.  However, the Ranch has not cited, nor have we
found, any cases in which a party has been “equitably indemnified.”  Further,
the Ranch failed to raise this argument in its response to the summary judgment
motions filed by appellees.  Thus, even if we were to craft such a legal
doctrine, which we are certainly disinclined to do, the Ranch cannot obtain
reversal of the summary judgments on that basis because it did not preserve
this argument for appeal.  See Argovitz, 2008 WL 5131843, at *8.  We
thus overrule the Ranch’s first issue.

2.         Statutory Indemnity

In its second issue, the Ranch asserts that it is
entitled to statutory indemnification because it is a “seller” as defined by
Chapter 82 of the Civil Practice & Remedies Code. We disagree.  The Ranch stipulated
that it is a ranch and timber farm and “has never been a retailer of chemicals
or chemical products of any kind, and, in particular has never sold chemical
products containing 2,4-D or 2,4,5-T.”  Chapter 82’s definition of a seller
clearly contemplates that the defective product, either by itself or as a
component part of another product, actually be sold by the party seeking
indemnification.  See Tex. Civ. Prac. & Rem. Code § § 82.001(3)
(defining “seller”), 82.002(d) (including a wholesale distributor or retail
seller that completely or partially assembles a product in accordance with
manufacturer’s instructions in definition of “seller”); see also Fresh Coat
Inc. v. K-2, Inc., 318 S.W.3d 893, 899 (Tex. 2010) (noting that Chapter
82’s definition of “seller” does not exclude sellers who provide services).  

The Ranch cites the Texas Supreme Court opinion Fresh
Coat Inc. v. K-2, Inc. to support its proposition that because it placed
something into the stream of commerce, i.e., Southern Pine wood, and it
may have used the appellees’ products to “enhance the growth of the good
commercial product[,]” i.e., by applying the chemicals to destroy
the undesirable hard wood trees, it qualifies as a “seller” under Chapter 39.  But
the indemnitee in Fresh Coat Inc. actually sold services in which it installed
the defective product in accordance with the manufacturer’s instructions, and
the manufacturer trained and certified the indemnitee’s personnel in the
installation of the defective product.  See Fresh Coat Inc., 318 S.W.3d
at 899.  Thus, the Supreme Court determined that the indemnitee was both a
seller and service provider:  it was in the business of providing the defective
product combined with the service of installing it.  See id.  Here, the
Ranch is not a service provider that used the appellees’ chemicals as part of
the services it sold.  In fact, the Ranch’s use of the allegedly defective
products did not place these chemicals into the stream of commerce at all. 
Rather, it is clear that the Ranch used these chemicals to kill unwanted types
of trees that it did not intend to place into the stream of commerce.[7]  Thus, Fresh
Coat Inc. is inapposite to the Ranch’s situation.[8]

In sum, the Ranch was, at most, a user of the
allegedly defective products, rather than a seller as contemplated by Chapter
82; the product the Ranch sold was Southern Pine wood, not any type of these
chemicals.  See SSP Partners, 275 S.W.3d at 449 (stating that Chapter 82
requires a manufacturer only to indemnify an innocent seller); see also
Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex.
1999) (determining, on a certified question from the United States Court of
Appeals for the Fifth Circuit, that a retailer who sells products of the
same or similar type as that involved in a products liability suit is
entitled to indemnity even if it did not sell the particular product claimed to
have harmed the underlying plaintiff); cf. Hadley v. Wyeth Labs., Inc.,
287 S.W.3d 847, 850 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (“[A]
seller must ‘be engaged in the business’ of distributing or placing the
product in the stream of commerce and . . . the purpose of doing so must be
a ‘commercial purpose’” (emphasis added)).  Because we have concluded that the
Ranch does not qualify as a “seller” under Chapter 82, the trial court did not
err in granting the appellees’ summary judgments on this basis.  We therefore
overrule the Ranch’s second issue.

3.         Common-Law
Indemnity

In issue three, the Ranch contends that it is
entitled to common-law indemnification because it is merely an “innocent
conduit” or vicariously liable “for the acts and omissions of the [a]ppellees
who manufactured the defective product.”  However, as discussed above, the
doctrine of common-law indemnity requires that the manufacturer either be
adjudicated liable or admit to liability for the product defect.  See Gen.
Motors Corp., 199 S.W.3d at 255.  Here, the Ranch acknowledges that “there
has not yet been an adjudication that each [a]ppellee is responsible for the
[c]laimant’s injuries.”  Further, none of the appellees admitted to liability
in any of their pleadings; indeed, they all filed general denials and argued in
their summary-judgment motions that there was neither a finding of liability against
them nor an admission of liability from them.[9] 


Moreover, for the reasons discussed above in section
C.2 of this opinion, the Ranch is not an “innocent retailer,” because it neither
sold these chemicals nor marketed them.  See Hernandez, 249
S.W.3d at 403; Duncan v. Cessna, 665 S.W.2d 414, 432 (Tex. 1984).  Under
these circumstances, the trial court properly granted appellees’ summary
judgments on the Ranch’s common-law indemnification claims.  We overrule its
third issue. 

CONCLUSION

The Ranch is not entitled to “equitable,” statutory,
or common-law indemnity from any of the appellees.  We overrule appellant’s
first three issues.  Because of our disposition of these issues, we need not
reach the Ranch’s fourth issue regarding the trial court’s prior rulings.[10]  We affirm
the trial court’s judgment.

 

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel
consists of Chief Justice Hedges and Justice Christopher (Brown, J. not
participating).

 









[1]
Although the original petition included claims against Thomas Matthew Foster
d/b/a North Fork Farms, apparently F & F Ranch was the name of the
partnership that owned the tree farms at issue.  For the sake of clarity, we
refer to this party as F & F Ranch.





[2]
The trial court concluded that neither Occidental nor its
predecessors-in-interest ever manufactured or produced the chemicals.





[3]
The trial court likewise concluded that neither Elementis nor its
predecessors-in-interest ever manufactured or produced the chemicals. 





[4]
The trial court determined that Monsanto conclusively established that it sold
the chemicals in question only to the United States Government.





[5]
We note that, prior to entry of this judgment, the Ranch’s attorney informed
the trial court that the parties had reached a settlement.  Our records contain
a copy of a confidential release signed by the plaintiffs and their attorney in
the underlying action.  This document indicates that the plaintiffs released
the Ranch from any liability for their causes of action “based solely upon
strict product liability (as alleged in Paragraph III B of Plaintiffs’ Amended
Original Petition) for Mr. Bower’s alleged exposure to the chemicals 2 4 D and
2 4-5 T, while working at Defendant’s Ranch in Cloudy, Oklahoma.”  The parties
further agreed to tender the final judgment, excerpted above, to the trial
court for entry.  In fact, the final judgment later signed by the trial court
was attached as an exhibit to the release.  After this final judgment was
signed, the plaintiffs non-suited all their other claims against the Ranch in
the underlying action.





[6]
Specifically, Aventis, Elementis, Monsanto, and Occidental sought summary
judgment on the grounds that:  (1) the Ranch was not entitled to statutory
indemnity because it was not a “seller,” the underlying action was not one for
“products liability,” and the Ranch had not suffered a “loss” and (2) the Ranch
was not entitled to common-law indemnity because it was not an “innocent
retailer” and none of the defendants had been adjudicated liable or admitted
liability for Bowers’s damages.  In its summary-judgment motion, Dow asserted
that the Ranch was not entitled to either statutory or common-law indemnity
because it was neither a “seller” nor an “innocent retailer,” and Dow had
neither been adjudicated liable nor admitted to liability for Bowers’s damages.





[7]
Indeed, if the Ranch’s reasoning were valid, all end users of an allegedly
defective product who were also in the business of selling something unrelated
to the defective product would qualify as a “seller.”  





[8]
A single sentence in the Fresh Coat Inc. opinion may imply that
selling any products could qualify a party seeking indemnity as a “seller”
under Chapter 82:  “We agree with the court of appeals that ‘Chapter 82’s
definition of “seller” does not exclude a seller who is also a service
provider, nor does it require the seller to only sell the product.’”  Id.
(emphasis added).  But the court clearly holds that the party seeking indemnity
must provide the defective product as part of its sales and services:

Chapter 82, like the Restatement,
anticipates that a product seller may also provide services.  Thus, we conclude
that when a company contracts to provide a product that is alleged to be
defective . . . , the company’s installation services do not preclude it
from also being a seller. 

Id. (emphasis added).





[9]
And, as noted above, the trial court in the underlying action determined that
Occidental and Elementis did not even make the chemicals and that Monsanto
established it had only sold the chemicals to the United States government.





[10]
See Tex. R. App. P. 47.1 (“The court of appeals must hand down a written
opinion that is as brief as practicable but that addresses every issue raised
and necessary to final disposition of the appeal.”).