

NUMBER 13-09-00103-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE CHARLES MACHINE WORKS, INC.,                                    Appellant,

v.

BUTLER RENTAL AND SALES, INC.,                                    Appellee.

### On appeal from the 94th District Court
### of Nueces County, Texas.

# OPINION

### Before Justices Yañez, Benavides, and Vela
### Opinion by Justice Yañez

Appellant, Charles Machine Works, Inc. ("Charles"), appeals the trial court's order

denying its motion for summary judgment and granting summary judgment in favor of

appellee, Butler Rental and Sales, Inc. ("Butler"), on Butler's statutory claim for indemnity

for losses arising out of a products liability suit.[1] By four issues, Charles contends that the trial court erred in granting summary judgment on Butler's chapter 82 indemnity claim because Charles owed no duty to indemnify Butler for sums that Butler paid in settlement of claims for which Butler was independently liable.[2] We affirm.

## I. Background

In April 2006, while inspecting a ditch being dug at a construction site, Manuel Aldape Duron Jr. was killed by a Ditch Witch trencher manufactured by Charles and leased to Duron's company by Butler. In April 2007, Duron's survivors ("the plaintiffs") sued Charles and Butler, alleging several products-liability and negligence theories against

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002 (Vernon 2005).

[2] Specifically, Charles characterizes its issues as follows:

1. The [j]udgment appealed requires Charles to indemnify Butler for sums Butler paid the Plaintiffs to settle claims based on "Butler's negligence, intentional misconduct or other acts or omissions for which Butler is independently liable," that is, claims that the statute specifically exempts from the obligation to indemnify.

2. Charles'[s] settlement of all claims against Butler except those for which Butler is *independently liable* (language of 82.002) fully redeems Charles['s] obligation as a manufacturer to indemnify a seller of the manufacturer's product when seller is sued both in product liability and negligence.

3. Charles settled all claims asserted by the Durons against Butler except claims defined in Section 82.002 as those for which Butler was "independently liable." Therefore, when Butler, thereafter, paid the Durons $75,000.00 in settlement[,] it could not have been to settle any claim for which Charles was obligated to indemnify Butler, such claims having been previously settled by Charles. Butler has not, and can not, prove a loss for which it is entitled to indemnity.

4. Charles'[s] partial satisfaction of the Judgment by paying all of the attorney's fees and costs incurred by Butler in defense of Plaintiffs' suit fully satisfies any possible indemnity obligation Charles may have to Butler since the remainder of the Judgment is for sums paid by Butler in settlement of Butler's "independent liability" and its fees and costs incurred in this suit to enforce an indemnity obligation that is not owed.

Each of these "issues" appears to be sub-points in a single argument: that Charles had no duty to indemnify Butler for the amount Butler paid in settlement because the settlement was to release claims for which Butler was independently liable.

2

Charles and negligence theories against Butler.[3] In its original answer, Butler asserted a cross-claim against Charles for statutory indemnity pursuant to chapter 82 of the civil practice and remedies code.[4] The plaintiffs filed an amended petition on May 29, 2007.

By a letter dated January 4, 2008, Charles offered to indemnify Butler for claims that the trencher was defective, but refused to provide indemnity for any negligence claims against Butler. The letter offered to reimburse Butler for its reasonable attorneys' fees "in defending the negligence claims successfully by obtaining a defense verdict or a dismissal with prejudice." Charles did not receive a response to its offer.

On March 14, 2008, Charles executed a confidential settlement agreement with the plaintiffs, by which the plaintiffs settled and released all product liability claims against both Charles and Butler. However, the agreement expressly did not release the plaintiffs' "claims based on Butler's negligence, intentional misconduct or other act[s] or omission[s]

---

[3] The negligent acts and omissions alleged by the plaintiffs against Butler included: renting the Ditch Witch without the proper accessories and equipment; failing to provide adequate operational instructions and training to the renters; and failing to properly train and/or supervise its own employees.

[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002, which provides, in pertinent part:

    (a)    A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

        . . . .

    (e)    The duty to indemnify under this section:

        (1)  applies without regard to the manner in which the action is concluded; and

        (2)  is in addition to any duty to indemnify established by law, contract, or otherwise.

*Id.*

for which Butler is independently liable."[5]  On March 24, 2008, Butler filed a supplemental answer, in which it (1) re-asserted its cross-claim against Charles for statutory indemnity and (2) asserted the affirmative defense of release, contending that the March 14, 2008 settlement agreement released all claims against it.[6]

On May 29, 2008, Butler sent a letter to Charles, advising that it had settled with the plaintiffs for $75,000, without admitting any fault.  Butler's letter sought indemnity from Charles for the $75,000 settlement amount, plus attorneys' fees and costs, pursuant to chapter 82 of the civil practice and remedies code.[7]   On August 4, 2008, the trial court issued an "Agreed Order of Dismissal" in Butler's favor, dismissing with prejudice "all of the [plaintiffs'] claims that have been asserted, or may have been asserted" by the plaintiffs against Butler.  Thus, as of August 4, 2008, none of the plaintiffs' claims against Butler remained pending.

On August 19, 2008, Charles filed a traditional motion for summary judgment, arguing that it was not obligated to indemnify Butler for the $75,000 in settlement monies because those funds were paid to release Butler for its own independent negligence. According to Charles's motion, "there is evidence to suggest Butler was independently liable for Plaintiffs' damages.  The payment of $75,000 to obtain a release from any further liability is evidence that a portion of Plaintiffs' loss is attributable to Butler's independent

---

[5] The March 4, 2008 settlement agreement is not included in the record.  Attached as evidence to Charles's motion for summary judgment is a document designated as "Exhibit 'A' to Settlement Agreement Executed March 14, 2008."  Exhibit A states that it is "hereby incorporated" into the settlement agreement. As noted, it states that the plaintiffs are settling and releasing the products liability claims against Charles and Butler, but states that it does not apply to the plaintiffs' claims against Butler for Butler's independent negligence or liability.

[6] There is no indication in the record that the trial court was ever provided a copy of the settlement agreement.

[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002.

4

negligence." Charles also cited, as evidence of Butler's independent liability, a statement taken from the plaintiffs' safety expert report asserting that Butler failed to properly train and warn customers of the dangers associated with using the Ditch Witch.[8]

In support of its motion, Charles attached the following summary judgment evidence: (1) its January 4, 2008 letter offering to indemnify Butler for products-liability claims; (2) an affidavit by Robert D. Tomlinson, Charles's counsel, which verified that the January 4, 2008 letter offered to indemnify Butler for products-liability claims, but not for Butler's own negligence; stated that the only response was Butler's May 29, 2008 demand letter; and verified "Exhibit D," describing the claims released by the settlement agreement, as an exhibit incorporated into the March 14, 2008 settlement agreement; (3) an excerpt from the plaintiffs' expert report; (4) "Exhibit D" to the motion, entitled "Exhibit 'A' to Settlement Agreement Executed March 14, 2008," releasing all products-liability claims against Charles and Butler; and (5) the May 29, 2008 letter from Butler demanding indemnity.

On September 2, 2008, Butler filed a traditional and no-evidence motion for summary judgment,[9] which included a response to Charles's motion and objections to (1)

---

[8] The statement in the report—apparently, an excerpt from the report of plaintiff's safety expert, Dr. Gary Nelson—is attached as summary judgment evidence to Charles's motion and states as follows:

19. Regarding Butler Rental, they failed to recognize the dual purpose the trench cleaner serves as discussed above and [failed to] install such "option" on all their trenchers for the protection of their customers[,] and in accordance with the third rule of hazard control, failed to properly train their rental customers in the safe use of the rented equipment, and warn them of any potential dangers associated with its use.

We note that "Exhibit C," attached to Charles's motion, consists only of the first page of the report and what appears to be page 18, containing the paragraph referencing Butler. The paragraphs immediately preceding paragraph 19 on Page 18 appear to address various alleged inadequacies in the Operating Manual. Thus, it is impossible to determine, on the record, what alleged "failure[s] to recognize . . . and install" Dr. Nelson was referring to in paragraph 19.

[9] See TEX. R. CIV. P. 166a(c), (i).

5

Nelson's report as summary judgment evidence and (2) the characterization of Butler's settlement as evidence of its independent culpability. In its motion, Butler asserted that (1) it was entitled to statutory indemnity unless Charles could prove the statutory exception—that Butler's independent negligence caused the plaintiffs' injuries—and (2) Charles could not prove that Butler's independent negligence caused the plaintiffs' injuries. Butler argued that Charles had the burden to prove Butler's independent culpability, and that the evidence fails to establish any such independent culpability.

In support of its motion for summary judgment, Butler attached the following as evidence: (1) an affidavit by its counsel, Will W. Pierson, which (a) verified Exhibits 1A through 1E; (b) explained why Butler's $75,000 settlement of the plaintiffs' claims was reasonable; and (c) outlined and explained Butler's attorneys' fees and expenses in defending against the plaintiffs' claims; (2) copies of the plaintiffs' original and first amended petitions; (3) a copy of Charles's designation of experts;[10] (4) excerpts from the deposition of Rich Lambert, an employee of Charles and designated as an expert witness by Charles;[11] (5) Pierson's curriculum vitae; and (6) a copy of Charles's objections and responses to discovery requests sent by Butler.

Butler's motion asserts that it is entitled to judgment on both traditional and no-evidence grounds. Butler argues that to avoid its duty to indemnify, Charles was required to prove Butler's independent culpability in causing the plaintiffs' injuries. In the section of its motion urging judgment on traditional grounds, Butler points to statements made by

---

[10] We note that many pages of the attached exhibits appear to be out of order in the clerk's record, and some pages are apparently missing.

[11] In the excerpted testimony, Lambert testified that Butler did not alter or modify the Ditch Witch, did not participate in the content or placement of the warning decals on the machine, and did not participate in determining the content of the operator's manual for the machine.

6

Charles's own experts, Dr. Way Johnston and Rich Lambert. Specifically, Butler cites a statement in Johnston's report that "there is no evidence of any negligence on the part of Butler Rental and Sales that caused the accident and resulting death of Manuel Duron." Butler also cites a section in Lambert's report noting that the Ditch Witch was in "excellent condition," "operating normally," and that the operator's manual was on the machine.

In the no-evidence section of its motion, Butler argues that Charles has no evidence that any independent culpability by Butler caused the plaintiffs' injuries, and thus, Charles does not meet the exception provided in section 82.002(a).[12] Butler argues that Charles's evidence—the statement of Dr. Nelson that Butler was guilty of two omissions and Butler's settlement with the plaintiffs—is not competent evidence. Butler contends that the excerpts from Dr. Nelson's report are not competent summary judgment evidence because, among other reasons, the report is unauthenticated and unsworn and Dr. Nelson's statements are conclusory and lack a reliable foundation. With respect to Butler's settlement with the plaintiffs, Butler cites this Court's opinion in *Oasis Oil Corp. v. Koch Refining Co.*[13] and the Texas Supreme Court's opinion in *General Motors Corp. v. Hudiburg Chevrolet*[14] in support of its position that its settlement with the plaintiffs did not terminate its indemnity claims. Thus, Butler argues, because Charles's evidence of Butler's independent culpability is not competent summary judgment evidence, Charles has no evidence to support its affirmative defense.

_____

[12] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a).

[13] 60 S.W.3d 248, 255 (Tex. App.–Corpus Christi 2001, pet. denied) ("Clearly, if a statutory seller's pretrial settlement of a qualifying products liability action is reasonable, then the statutory seller is entitled to indemnification from the statutory manufacturer.").

[14] 199 S.W.3d 249, 255-56 (Tex. 2006) ("This follows from section 82.002(e)(1), which states that 'the duty to indemnify under this section . . . applies without regard to the manner in which the action is concluded'— whether by judgment, settlement, or dismissal.").

On September 16, 2008, Charles filed a response to Butler's motion for summary judgment. As evidence of Butler's independent culpability, Charles offered the following summary judgment evidence: (1) excerpts from Nelson's deposition testimony; (2) an excerpt from Nelson's expert safety report (the same statement earlier submitted by Charles as summary judgment evidence); (3) a redacted "Exhibit 'A' to Settlement Agreement" dated March 14, 2008; and (4) Tomlinson's affidavit identifying the exhibits.

Charles attached only eight pages from Nelson's deposition testimony. The testimony established that Nelson had not conducted any interviews at other companies that rent trenchers to determine whether those companies provide any training to customers that rent trenchers. Nelson testified, in pertinent part:

| | |
|---|---|
| Q [Butler's counsel]: | Now, you reviewed the deposition testimony of the [trencher] operator in this case, Alfonso Cardenas, correct? |
| A [Nelson]: | Yes. |
| Q: | And he in fact had been operating trenchers for Duron & Duron for over 15 years. |
| A: | That's my understanding, yes. |
| Q: | Okay. So you would expect someone with that length of time operating trenchers to have a lot of service hours with an RT 40 trencher, or similar trencher— |
| [Unidentified counsel]: | Object to form. |
| Q [Butler's counsel]: | —prior to the accident? |
| A: | Yes. |
| Q: | And you would agree that someone in that position would be an experienced operator of a trencher. |

8

[Unidentified counsel]: Object to form.

A: He's got a lot of hours in, let's put it that way.

Q: And you would agree that someone with that much experience wouldn't need any type of basic training on how to operate a trencher.

A: I would disagree. Sometimes, you know, somebody could have 1,500 hours worth of experience, or they could have one hour of experience repeated 1,500 times. In other words, just because he's got time in doesn't mean that he's been properly trained.

. . . .

Q: That really wasn't my question, but I'll get into that. My question was, [y]ou agree that Mr. Cardenas had about 15 years of experience using trenchers similar to the RT 40 prior to the accident.

A: Yes.

Q: He was not a first time user—

A: Correct.

Q: —of the RT 40 at the time of the accident.

A: That's my understanding, yes.

Q: He wasn't even a relatively new user of the RT 40 at the time of the accident.

A: That's correct.

Q: So you would agree with me that *any training that Butler would have provided to him prior to the accident wouldn't have made any difference*,—[15]

---

[15] Emphasis added.

[Unidentified counsel]:     Objection, form.

Q [Butler's counsel]:        —correct?

Inexplicably, the excerpt ends with this question from Butler's counsel as to whether any training by Butler would have made a difference—the only question in the record that arguably addresses whether the plaintiffs' loss was "caused by" Butler's alleged failure to train.  Charles chose not to include Nelson's answer to the question.

On September 23, 2008, the trial court apparently heard both motions for summary judgment.[16]  On December 18, 2008, the court signed an "Agreed Order of Dismissal," by which the plaintiffs dismissed all products-liability claims against Charles and Butler pursuant to a settlement agreement.  The order notes that "prior to entry of this Order of Dismissal," the plaintiffs had settled all their claims against Butler and that an order of dismissal against Butler was entered on August 4, 2008.

On January 22, 2009, the trial court issued its "Final Summary Judgment," by which the court:  (1) overruled Butler's objections to Charles's summary judgment evidence; (2) denied Charles's motion for summary judgment; (3) granted Butler's motion for summary judgment "on all issues"; (4) found that Butler is entitled to recover $75,000 in reasonable damages, $83,923.25 in reasonable attorneys' fees and expenses incurred in defending against the plaintiffs' claims, and $7,786.19 in reasonable attorneys' fees and expenses to enforce its right to indemnification, for a total of $166,709.44 awarded to Butler; and (5) awarded Butler post-judgment interest and specified amounts for appellate costs in the

---

[16] The record before us does not include a reporter's record of the hearing.  However, the docket sheet reflects an entry for "Motion for Summary Judgment Hearing" on September 23, 2008 and the court's final summary judgment recites that the court "heard" the motions on September 23, 2008.

event of an unsuccessful appeal by Charles.[17]  This appeal followed.

## II.  Standard of Review and Applicable Law

Here, Charles's motion was a traditional motion for summary judgment and Butler's motion was a combined "traditional" and "no-evidence" motion.  We review the trial court's grant of summary judgment de novo.[18]  "When, as here, both parties file a motion for summary judgment with the trial court, and one is granted and one is denied, the reviewing court determines all questions presented and renders the judgment that should have been rendered by the trial court."[19]  When the trial court does not specify the basis for its ruling, it is the appellant's burden on appeal to show that none of the independent grounds that were asserted in support of summary judgment is sufficient to support the judgment.[20]  Thus, when the trial court's order granting summary judgment does not specify the grounds on which it was granted, we will affirm the summary judgment if any of the advanced theories support the judgment.[21]

When a party moves for summary judgment under both rules 166a(c) and 166a(i) of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under the standards of rule 166a(i).[22]  If the appellant fails to produce more than a scintilla of

---

[17] Charles has made partial payment to Butler of $83,923.25 in attorneys' fees and expenses, and the court approved a supersedeas bond filed by Charles in the amount of $114,565.19.

[18] *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).

[19] *HC Beck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009).

[20] *Coffey v. Singer Asset Fin. Co.*, 223 S.W.3d 559, 562-63 (Tex. App.–Dallas 2007, no pet.) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

[21] *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005) (citing *Provident Life Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003)); *Coffey*, 223 S.W.3d at 563.

[22] *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfies the less stringent rule 166a(c) burden.[23]

Section 82.002(a) of the civil practice and remedies code imposes a duty on manufacturers to indemnify sellers for a "loss arising out of a products liability action."[24] "It provides an exception 'for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.'"[25] Thus, to escape its duty to indemnify, the manufacturer must establish that the seller's independent culpable conduct "caused" the plaintiffs' loss.[26] Until the manufacturer establishes that a seller's independent conduct caused the plaintiff's injury, a mere allegation of negligence in the plaintiff's pleadings is sufficient to invoke the manufacturer's duty to indemnify the seller for all theories properly joined to a products liability claim.[27] As the Texas Supreme Court recently clarified, "what matters is not merely whether but *why* a seller is independently liable."[28] "'[T]he duty to indemnify under this section . . . applies without regard to the manner in which the action is concluded'—whether by judgment, settlement, or dismissal."[29]

---

[23] *Id.*

[24] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a); *Fresh Coat, Inc. v. K-2, Inc.*, 53 Tex. Sup. Ct. J. 1046, No. 08-0592, 2010 Tex. LEXIS 610, at *13 (Tex. Aug. 20, 2010).

[25] *Fresh Coat, Inc.*, 2010 Tex. LEXIS 610, at *13 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a)).

[26] *Id.* at **16-17, 19 ("'To escape this duty to indemnify, the indemnitor must prove the indemnitee's independent *culpability*.'") (quoting *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 255 (Tex. 2006) (emphasis in *Fresh Coat*)).

[27] *Owens & Minor, Inc. v. Ansell Healthcare Prods.*, 251 S.W.3d 481, 484 (Tex. 2008).

[28] *Fresh Coat, Inc.*, 2010 Tex. LEXIS 610, at *19.

[29] *Hudiburg*, 199 S.W.3d at 256 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 82.002 (e)(1)); *see Oasis Oil Corp.*, 60 S.W.3d at 255.

## III.  Discussion

We begin by addressing Butler's no-evidence motion that Charles had no evidence that any independent culpability by Butler caused the plaintiffs' injuries.[30]  As noted above, in response to Butler's motion, Charles offered:  (1) excerpts from Nelson's deposition testimony; (2) paragraph 19 from Nelson's expert report; and (3) "Exhibit A" to the March 14, 2008 settlement agreement.  We conclude that none of Charles's evidence established that the plaintiffs' injuries were caused by Butler's independent culpability.[31]

As noted, Charles was required to prove that Butler's independent culpability "caused" the plaintiffs' injuries.[32]  Nelson's deposition testimony established only that: (1) Nelson had not contacted other local companies that rent construction equipment to determine whether those companies provide training to their customers; and (2) in Nelson's opinion, although Cardenas had extensive experience operating trenchers and did not believe he needed training, he may not have been properly trained.  The only question in the excerpted portions of Nelson's testimony which arguably addressed whether the plaintiffs' loss was "caused by" Butler's alleged failure to train—and therefore, might have raised a fact question as to causation—was not answered in the excerpted testimony.  As to paragraph 19 in Nelson's report, the only identifiable alleged "failure" attributable to Butler is the alleged "failure to properly train [its] rental customers in the safe use of the rented equipment," and failure to "warn [its customers] of any potential dangers associated

---

[30] *See Ford Motor Co.*, 135 S.W.3d at 600.

[31] Butler objected to Nelson's expert report and deposition testimony, but the trial court overruled those objections and considered the evidence.  Because the trial court considered it, we consider it also; however, we need not, and do not, state any opinion as to the propriety of the trial court's decisions regarding Butler's objections.

[32] *Fresh Coat, Inc.*, 2010 Tex. LEXIS 610, at **16-17, 19.

13

with its use." This evidence does not raise a fact question as to whether the plaintiffs' injuries were "caused by" Butler's alleged "failure to train" or "failure to warn."

With regard to the offer of "Exhibit A" to the March 14, 2008 settlement agreement, Charles argues that because the March 14, 2008 settlement agreement settled all products-liability claims against it and Butler, we must necessarily infer that Butler's subsequent settlement with the plaintiffs could *only* have been to release claims for which Butler was independently liable.[33] It is clear, however, that Texas law does not support Charles's argument. An inference is insufficient to establish the exception to a manufacturer's duty to indemnify; instead, to invoke the exception, a manufacturer must *prove*: (1) that the seller was independently culpable and (2) that the seller's conduct "caused" the loss.[34] As the supreme court explained its decision in *Meritor*,

> In *Meritor*, we again refused to limit the indemnity obligation by holding that Section 82.002(a)'s exception to a manufacturer's general indemnity obligation is established only by a finding that a *seller's independent conduct caused* the plaintiff's injury. Until such a finding is made, a mere allegation of negligence in the plaintiff's pleadings is sufficient to invoke the manufacturer's duty to indemnify the seller *for all theories* properly joined to a products liability claim.[[35]]

---

[33] This argument was asserted in Charles's third issue.

[34] *See Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 91 (Tex. 2001) ("[I]t must be established that seller's conduct 'caused' the loss."); *Hudiburg*, 199 S.W.3d at 255 ("To escape this duty to indemnify, the indemnitor must prove the indemnitee's independent culpability."); *see also Emplrs. Ins. Co. v. Penn-America Ins. Co.*, No. G-08-0069, 2010 U.S. Dist. LEXIS 32654, at *42 (S.D. Tex. Mar. 31, 2010) ("[T]o invoke the exception to the statutory duty to indemnify, a manufacturer must *prove* the seller's independent culpability"); *Dean's Campin' Co. v. Hardsteen*, No. 01-00-1190-CV, 2002 Tex. App. LEXIS 6256, at *13 (Tex. App.–Houston [1st Dist.] 2002, pet. denied) (mem. op.) ("This holding imposes on the manufacturer the burden to prove that the exception to the manufacturer's duty to indemnify the seller applies.").

[35] *Owens & Minor, Inc.*, 251 S.W.3d at 484 (emphasis added) (internal citations omitted) (citing *Meritor*, 44 S.W.3d at 88-91); *see also Toyota Indus. Equip. Mfg. v. Carruth-Doggett, Inc.*, No. 01-09-399-CV, 2010 Tex. App. LEXIS 2322, at **16-17 (Tex. App.–Houston [1st Dist.] Apr. 10, 2010, pet. filed) (mem. op.) ("Thus, *Meritor* held that a negligence claim that is properly joined to a products liability action is to be considered part of the products liability action in terms of a manufacturer's duty to indemnify an innocent seller, and the manufacturer is required to indemnify the seller for any loss arising out of the action except

14

The Texas Supreme Court recently clarified several issues concerning the applicability of section 82.002's exception to a manufacturer's duty to indemnify.[36] In *Fresh Coat, Inc. v. K-2, Inc.,* numerous homeowners sued: (1) K-2, the manufacturer of allegedly defective synthetic stucco components; (2) Fresh Coat, the contractor that installed the product on several homes; and (3) Life Forms, the homebuilder.[37] Life Forms sought indemnity from K-2 and Fresh Coat; Fresh Coat sought indemnity from K-2.[38] As the court explained:

> K-2, Life Forms, and Fresh Coat settled with the homeowners. Fresh Coat paid the homeowners just over $ 1 million. Fresh Coat also settled with Life Forms, paying $ 1.2 million to cover part of Life Forms' payment to the homeowners. The case proceeded to trial on various claims the defendants brought against each other. This appeal concerns claims Fresh Coat asserted against K-2. Fresh Coat sought indemnity from K-2 for its settlements with the homeowners and Life Forms, as well as $ 726,642 in attorney fees. The claims were tried to a jury, and Fresh Coat received a judgment for all the damages requested.
>
> The court of appeals affirmed the trial court's judgment except with regard to the settlement payment Fresh Coat made to Life Forms. The court rejected K-2's arguments that its EIFS[39] was not a "product" and that Fresh Coat was not a "seller," and upheld the indemnity award as to the payment to the homeowners. However, with respect to Fresh Coat's settlement with Life Forms, the court agreed with K-2 that it owed Fresh Coat no statutory indemnity duty because Fresh Coat would have been liable to Life Forms under the contract between the two regardless of whether either of them caused a defect in the EIFS.[40]

---

when there is a *finding* that the seller independently *caused the loss*.") (citing *Meritor*, 44 S.W.3d at 87) (emphasis added).

[36] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a).

[37] *Fresh Coat, Inc.*, 2010 Tex. LEXIS 610, at **1-2.

[38] *Id.* at *2.

[39] "EIFS" is an acronym for exterior insulation and finishing system. *Id.* at *1.

[40] *Id.* at **2-3 (internal footnotes omitted).

The supreme court held that: (1) synthetic stucco is a "product;" (2) Fresh Coat, the contractor that installed it, is a "seller"; and (3) "the manufacturer's statutory obligation to indemnify the contractor covers a settlement payment made by the contractor to the homebuilder where the contractor may have been independently obligated by contract to indemnify the homebuilder."[41] K-2 argued that it should not have to indemnify Fresh Coat for the settlement payment that Fresh Coat made to Life Forms because Fresh Coat's contract with Life Forms contained an indemnity provision which required Fresh Coat to indemnify and hold Life Forms harmless for any homeowner claims regardless of any fault by Life Forms.[42] The supreme court concluded that Fresh Coat was entitled to indemnity from K-2 for its settlement payment to Life Forms because K-2 had not proven that section 82.002(a)'s exception was applicable.[43] The court reasoned:

> The court of appeals focused solely on Fresh Coat's independent liability, and did not find the reason for that liability relevant. Fresh Coat argues that Section 82.002(a) creates an exception for the manufacturer's duty to indemnify that only applies when the seller tortiously causes a loss. We agree with Fresh Coat that K-2 has not proven that Fresh Coat caused the loss via the type of act or omission contemplated in the statute.

> Section 82.002(a) excepts the manufacturer from indemnity only when it proves that a loss was "caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." K-2 argues it should not be liable for contractual obligations that it was not a party to, namely, any losses Fresh Coat suffered solely as a result of its contract with Life Forms rather than as a result of Fresh Coat's products-liability obligations. But Section 82.002(a) does not exempt manufacturers from their indemnity obligations for "any loss . . . for which the seller is independently liable." Such a reading disregards the 20 words between "any loss" and "for which . . . ."

---

[41] *Id.* at *1.

[42] *Id.* at **13-14.

[43] *Id.* at *16.

. . . .

> The 20 words in Section 82.002(a) that K-2 ignores make clear that what is important is not merely whether a seller is independently liable, but *why*. Otherwise, all of those intervening words in Section 82.002(a) would be needless. Although we have not previously held that what matters is not merely whether but *why* a seller is independently liable, this Court has suggested as much: "To escape this duty to indemnify, the indemnitor must prove the indemnitee's independent culpability."

> Section 82.002(a) exempts from indemnity a seller's own "negligence, intentional misconduct," or act "such as negligently modifying or altering the product" for which the seller would be independently liable. Section 82.002(a) does not always exempt losses arising from a contractual indemnity obligation. We express no opinion as to whether a loss need always be tortious to fit within the ambit of Section 82.002(a)—the statute includes "other act[s] or omission[s]" that may not necessarily be tortious. On today's facts, though, K-2 has not conclusively established a loss for which it is exempt from indemnity.[44]

In the present case, even if we accepted Charles's argument that Butler's subsequent settlement with the plaintiffs could only have been to release claims for which Butler was independently liable, Charles has presented no evidence raising a fact issue as to *why* Butler is independently liable. As in *Fresh Coat,* Charles's argument urges us to ignore the twenty words in section 82.002(a) that "make clear that what is important is not merely whether a seller is independently liable, but *why*."[45]

## IV. Conclusion

We hold that Charles presented no evidence raising a genuine issue of fact that any independent culpability by Butler caused the plaintiffs' injuries.[46] Accordingly, the trial court did not err in granting summary judgment in Butler's favor and in denying Charles's motion

---

[44] *Id.* at **16-20 (internal footnotes and citations omitted).

[45] *Id.* at *18-19.

[46] *See* TEX. R. CIV. P. 166a(i); TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a).

for summary judgment.[47]  We overrule all of Charles's issues and affirm the trial court's judgment.

                                        LINDA REYNA YAÑEZ,
                                        Justice

Delivered and filed the
14th day of October, 2010.

---

[47] Because of our disposition, we need not address Butler's traditional motion for summary judgment or Charles's arguments challenging it.  *See Browning*, 165 S.W.3d at 344 (noting we may affirm summary judgment if any of the advanced theories support the judgment).