**FRESH COAT, INC., Petitioner,**

**v.**

**K–2, INC., Respondent.**

**No. 08–0592.**

Supreme Court of Texas.

Argued Dec. 17, 2009.

Decided Aug. 20, 2010.

---

Kevin D. Jewell, Chamberlain, Hrdlicka, ʰhite, Williams & Martin, Robert H. ₐteman, Adam Brett Chambers, Bateₐn/Pugh, P.L.L.C., Houston, for Petition-ᵣ.

Thomas C. Wright, Richard Russell Holₙbeck, Michael A. Choyke, Wright ʳown & Close, LLP, Houston, William V. ᵣsaneo III, SMU School of Law, Dallas, ₗlph Edward Gustafson, Wade B. Reese,

Tucker, Taunton, Snyder & Slade, Houston, William Allen Adair, Conroe, Bradley Wayne Snead, Wright Brown & Close, LLP, Houston, for Respondent.

Justice WILLETT delivered the opinion of the Court.

This indemnity case concerns products-liability litigation in the residential construction industry. Specifically, we examine a synthetic stucco manufacturer's duty to indemnify a contractor under Chapter 82 of the Texas Civil Practice and Remedies Code. Two threshold questions are paramount: (1) Is synthetic stucco a "product"? and (2) Is the contractor that installs it on a house a "seller"? We answer yes to both, meaning Chapter 82 applies. We also conclude that the manufacturer's statutory obligation to indemnify the contractor covers a settlement payment made by the contractor to the homebuilder where the contractor may have been independently obligated by contract to indemnify the homebuilder. We therefore affirm in part and reverse in part the court of appeals' judgment, and render judgment for Fresh Coat, Inc. in accord with the trial court's original judgment.

## I. Background

K–2, Inc. manufactures synthetic stucco components that are collectively referred to as EIFS, an acronym for exterior insulation and finishing system. Fresh Coat, Inc. contracted with a homebuilder, Life Forms, Inc., to install EIFS on the exterior walls of several homes that Life Forms was building. Fresh Coat purchased K–2's EIFS and installed it with the help of K–2's instructions and training.

Over 90 homeowners sued K–2, Life Forms, and Fresh Coat, alleging the EIFS allowed water penetration that in turn caused structural damage, termite problems, and mold. The plaintiffs alleged the

EIFS was defectively designed, manufactured, and marketed, and also asserted claims for negligence, deceptive trade practices, negligent misrepresentation, and breach of warranty. Life Forms filed cross-claims against Fresh Coat and K–2, seeking indemnity for losses from the homeowners' claims. Fresh Coat sought indemnity from K–2.

K–2, Life Forms, and Fresh Coat settled with the homeowners. Fresh Coat paid the homeowners just over $1 million. Fresh Coat also settled with Life Forms, paying $1.2 million to cover part of Life Forms' payment to the homeowners. The case proceeded to trial on various claims the defendants brought against each other. This appeal concerns claims Fresh Coat asserted against K–2. Fresh Coat sought indemnity from K–2 for its settlements with the homeowners and Life Forms, as well as $726,642 in attorney fees. The claims were tried to a jury, and Fresh Coat received a judgment for all the damages requested.

The court of appeals affirmed the trial court's judgment except with regard to the settlement payment Fresh Coat made to Life Forms.[1] The court rejected K–2's arguments that its EIFS was not a "product" and that Fresh Coat was not a "seller," and upheld the indemnity award as to the payment to the homeowners. However, with respect to Fresh Coat's settlement with Life Forms, the court agreed with K–2 that it owed Fresh Coat no statutory indemnity duty because Fresh Coat would have been liable to Life Forms under the contract between the two regardless of whether either of them caused a defect in the EIFS.

**1.** 253 S.W.3d 386, 399 (Tex.App.—Beaumont 2008).

**2.** K–2 does not argue, however, that the evidence compels the conclusion that Fresh Coat's installation of EIFS caused the loss

K–2 and Fresh Coat each filed petitions in this Court. K–2 argues that the court of appeals erred in awarding Fresh Coat indemnification for the homeowners' settlement because under Chapter 82 EIFS is not a product, and Fresh Coat is not a seller.[2] Fresh Coat argues that the court of appeals erred in denying Fresh Coat indemnity from K–2 for Fresh Coat's settlement with Life Forms.

## II. Discussion

Chapter 82 governs a manufacturer's indemnity obligations arising from a "products liability action." Section 82.002(a) states:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

### A. Is EIFS a "Product" Under Chapter 82?

■ Section 82.002(a) applies to losses arising from a products-liability action, which Section 82.001(2) defines as

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty,

rather than the product itself. K–2 instead focuses upon Fresh Coat's contractual liability. As discussed below, a jury found that K–2 was responsible for the loss, not Fresh Coat. K–2 does not challenge that jury finding.

or any other theory or combination of theories.

K–2 argues that EIFS was not a "defective product" for purposes of Chapter 82. K–2 claims the "product" was the finished EIFS wall of the home, if not the home, while Fresh Coat argues that Life Forms purchased EIFS components plus the services required for its installation, and that the synthetic stucco system is the product. K–2 does not dispute that EIFS is a product as it was sold by K–2; rather K–2 claims that, after the EIFS components were purchased by Fresh Coat, they were not resold as products.

Under K–2's definition of product, products that become part of homes cannot be the subject of indemnity claims by homebuilders and their contractors if those homebuilders and contractors are sued by homeowners. Instead, K–2 claims that products placed into the stream of commerce are not products once they become integrated into a house, which is real property, even if they were products for all purposes beforehand. We agree with the court of appeals that Chapter 82 contains no such limitation.

Chapter 82 itself does not define "product," but it defines "seller" as

a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.[3]

From that definition, a product is something distributed or otherwise placed, for any commercial purpose, into the stream of commerce for use or consumption.

We hold that the EIFS provided by Fresh Coat was a "product" as that word is used in the text of Chapter 82. K–2 does not dispute that it is a manufacturer under Chapter 82 and that it placed its EIFS—which it admits is a product—into the stream of commerce. As the court of appeals noted, "The record establishes that the EIFS is a synthetic stucco system made of component parts manufactured by [K–2]."[4] Likewise, the EIFS was used by Life Forms in the construction of homes, in addition to whatever use it was put to by homeowners. At least as to Fresh Coat's transaction with Life Forms, the EIFS was "used."

Other definitions of "product" also comport with how products are described in Chapter 82. Black's Law Dictionary defines "product" as "[s]omething that is distributed commercially for use or consumption and that is usu[ally] (1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption."[5] The Third Restatement of Torts uses a similar definition for "product":

A product is tangible personal property distributed commercially for use or consumption. Other items, such as real property and electricity, are products when the context of their distribution and use is sufficiently analogous to the distribution and use of tangible personal property. . . . [6]

Each party argues that comment e to Section 19 of the Restatement supports that party's own definition of product. However, comment e merely addresses whether a person is a product seller, not whether something is a product. Even so,

---

3. Tex. Civ. Prac. & Rem.Code § 82.001(3).

4. 253 S.W.3d at 392.

5. Black's Law Dictionary 1245 (8th ed.2004).

6. Restatement (Third) of Torts· Products Liability § 19 (1998).

it is unclear from comment e whether things such as EIFS—products that may become attachments to real property for other legal purposes—would be considered products.[7]

Chapter 82's definition of manufacturer is also instructive. Section 82.001(4) defines "manufacturer" as

> a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

Under this definition, a manufacturer is anyone who builds, formulates, or assembles the product *or any component part thereof.* Thus, even if K–2 were correct that an EIFS wall is the relevant "product," a manufacturer may be liable for defects in "any component part thereof." This language suggests the word "product" should not be read narrowly to exclude EIFS.

None of the sources discussed above, including Chapter 82, except from the definition of product those things that may become an integral part of a home. More-over, the Legislature could have easily excluded such products from the definition of product, or from "products liability actions" as that term is defined in Chapter 82. The Legislature could have added a few words to carve out components of homes or components of homes that become fixtures by some definition. Yet there is nothing in the text that can be read to exclude EIFS from being the type of defective product that can give rise to a products-liability action.

The courts of appeals appear not to have dealt with the specific question of whether a home component can be a product for purposes of Chapter 82, but they have applied Texas products-liability law to *sub-components* of homes.[8] K–2 cites no statutory text that indicates a narrow definition of "product" elsewhere, so we decline to read the term "product" more narrowly than it appears from the language of Chapter 82. We accordingly hold that the EIFS is a product under Chapter 82.

## B. Is Fresh Coat a "Seller" Under Chapter 82?

K–2 contends that even if EIFS is a product, Fresh Coat is not a seller. K–2

---

7. Comment e clarifies that "courts have been reluctant to impose products liability on sellers of improved real property," but that "courts have treated sellers of improved real property as product sellers in a number of contexts." For instance,

> [w]hen a building contractor who sells a building that contains a variety of appliances or other manufactured equipment, the builder, together with the equipment manufacturer and other distributors, are held as product sellers with respect to such equipment notwithstanding the fact that the built-in equipment may have become, for other legal purposes, attachments to and thus part of the underlying real property.

*Id.* Comment e also notes that builders may be held liable as product sellers even with regard to homes when they sell prefabricated homes or other cookie-cutter-type homes as part of a large development.

8. *See, e.g., Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.,* 848 S.W.2d 724, 731–32 (Tex.App.-Dallas 1992, writ denied) (treating fiberboard as a product for purposes of products-liability claims); *Bennett v. Span Indus., Inc.,* 628 S.W.2d 470, 472 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.) (noting that had there been a defect in a component installed in a building, that defect might have supported a legitimate claim of products liability); *Cupples Coiled Pipe, Inc. v. Esco Supply Co.,* 591 S.W.2d 615, 615–16, 618 (Tex.Civ. App.-El Paso 1979, writ ref'd n.r.e.); *Hovenden v. Tenbush,* 529 S.W.2d 302, 305–06 (Tex. Civ.App.-San Antonio 1975, no writ) (treating used bricks in a building as defective products after walls made with the bricks deteriorated).

says Fresh Coat did not place EIFS into the stream of commerce since EIFS was applied to walls that were part of newly constructed homes. K–2 further characterizes Fresh Coat as a service provider, not a product seller, because Fresh Coat provided EIFS installation services. Fresh Coat acknowledges it provided EIFS installation services, but claims it was a product seller *and* a service provider, and that companies that do both may be considered product sellers under Chapter 82.

In Chapter 82, "seller" is defined as

> a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.[9]

Section 82.002(d) elaborates with regard to a manufacturer's duty to indemnify:

> For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.

We agree with the court of appeals that "Chapter 82's definition of 'seller' does not exclude a seller who is also a service provider, nor does it require the seller to only sell the product."[10] That approach is consistent with the Third Restatement of Torts, which recognizes that a product seller may also provide services.[11]

We further agree with the court of appeals that Fresh Coat provided legally sufficient evidence that it is a product seller for purposes of Chapter 82. It is undisputed that Fresh Coat installed EIFS according to K–2's instructions. Moreover, K–2 trained and certified Fresh Coat personnel in the installation of its EIFS system. Under its contract with Life Forms, Fresh Coat was to provide "labor, services and/or materials, equipment, transportation, or facilities necessary" in order to provide "synthetic stucco application and finish." As the court of appeals noted, witnesses testified that Fresh Coat was in the business of providing EIFS products combined with the service of EIFS installation.[12] The products K–2 sold to Fresh Coat included base coat, mesh, and finish coat.

■ Chapter 82, like the Restatement, anticipates that a product seller may also provide services. Thus, we conclude that when a company contracts to provide a product that is alleged to be defective— like the EIFS system in this case—the company's installation services do not preclude it from also being a seller. Accordingly, as to indemnity for Fresh Coat's settlement with the homeowners, we affirm the court of appeals' judgment.

## C. Effect of Fresh Coat's Contract with Life Forms

■ Section 82.002(a) imposes a duty on manufacturers to indemnify sellers for a "loss arising out of a products liability action." It provides an exception "for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable."

K–2 does not argue that the statutory exception should apply because Fresh Coat improperly installed the EIFS, an argument that would apply equally to Fresh Coat's settlements with Life Forms

---

9. Tex. Civ. Prac. & Rem. Code § 82.001(3).

10. 253 S.W.3d at 393.

11. *See* Restatement (Third) of Torts· Products Liability §§ 19, 20 (1998).

12. 253 S.W.3d at 393.

and the homeowners.[13] Instead, K–2 argues it should not have to indemnify Fresh Coat for the settlement payment Fresh Coat made to Life Forms because Fresh Coat's contract with Life Forms contained an indemnity provision. The court of appeals agreed with K–2, concluding Fresh Coat's settlement payment to Life Forms was not subject to indemnity under Chapter 82 because it "was based solely on Fresh Coat's independent liability under the contract" between Fresh Coat and Life Forms.[14] A Fresh Coat attorney testified that Fresh Coat indemnified Life Forms because its contract with Life Forms required indemnification regardless of any fault on the part of Life Forms. The contract indeed states in a "Contractor's Indemnity" provision that Fresh Coat agrees to indemnify and hold Life Forms harmless for any claims in favor of homeowners and others "on account of" property and other losses "in any way occurring, incident to, arising out of or on [sic] connection with ... the work performed by the contractor...."

Under Section 82.002(a), Fresh Coat's settlement with Life Forms "ar[ose] out of a products liability action." Fresh Coat's settlement indisputably arose out of homeowner claims against Life Forms that were settled. Those underlying homeowner claims, as well as Life Forms' indemnity cross-claim against Fresh Coat, were brought in a "products liability action," which, under Section 82.001(2), is broadly defined to include actions for damage allegedly caused by a defective product "whether the action is based in strict tort liability ... negligence ... or any other theory or combination of theories." As explained above, the claims in this case involved a "product." Further, since Fresh Coat was a "seller" under Section 82.002(a), that provision requires indemnity from K–2 for Fresh Coat's settlement with Life Forms unless the exception found in Section 82.002(a) applies.

The court of appeals reasoned that Fresh Coat could not recover its settlement payment to Life Forms from K–2 since Fresh Coat was independently liable for the loss in the contract. However, the statute does not except the manufacturer from its indemnity obligation whenever the seller is contractually liable to another. The exception applies only for "any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable."[15]

The court of appeals excluded from its analysis all the language of the exception preceding "for which the seller is independently liable." The jury, however, was correctly instructed to exclude from its calculation of Fresh Coat's loss "any amount that constitutes loss caused by Fresh Coat's own negligence, intentional misconduct, or other act or omission, if any (such as negligently modifying or altering the product), for which Fresh Coat is independently liable." The jury did not find the exception applicable.

The court of appeals focused solely on Fresh Coat's independent liability, and did not find the *reason* for that liability relevant. Fresh Coat argues that Section

---

**13.** As noted above, the jury was instructed to exclude from its calculation of Fresh Coat's loss "any amount that constitutes loss caused by Fresh Coat's own negligence, intentional misconduct, or other act or omission, if any (such as negligently modifying or altering the product, for which Fresh Coat is independently liable." The jury did not find the exception applicable, and K–2 does not argue that the jury's finding of loss is unsupported by legally sufficient evidence.

**14.** 253 S.W.3d at 396.

**15.** TEX. CIV. PRAC. & REM.CODE § 82.002(a).

82.002(a) creates an exception for the manufacturer's duty to indemnify that only applies when the seller tortiously causes a loss. We agree with Fresh Coat that K–2 has not proven that Fresh Coat caused the loss via the type of act or omission contemplated in the statute.

Section 82.002(a) excepts the manufacturer from indemnity only when it proves that a loss was *"caused by* the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." [16] K–2 argues it should not be liable for contractual obligations that it was not a party to, namely, any losses Fresh Coat suffered solely as a result of its contract with Life Forms rather than as a result of Fresh Coat's products-liability obligations. But Section 82.002(a) does not exempt manufacturers from their indemnity obligations for "any loss ... for which the seller is independently liable." Such a reading disregards the 20 words between "any loss" and "for which. . . ."

Moreover, Section 82.002(e) expressly provides that the manufacturer's "duty to indemnify under this section ... is in addition to any duty to indemnify established by law, contract, or otherwise." Thus,

Section 82.002(e) suggests that the indemnification duty under Chapter 82 is not affected by the mere creation of other contracts or obligations to indemnify.

 Our "ultimate purpose" when construing statutes "is to discover the Legislature's intent." [17] Presuming that lawmakers intended what they enacted,[18] we begin with the statute's text,[19] relying whenever possible on the plain meaning of the words chosen.[20] In addition, "we examine the entire act to glean its meaning," [21] try to give meaning to each word,[22] and avoid treating statutory language as surplusage where possible.[23] Finally—and essential here—we "presume that 'the entire statute is intended to be effective.' " [24]

The 20 words in Section 82.002(a) that K–2 ignores make clear that what is important is not merely whether a seller is independently liable, but *why*. Otherwise, all of those intervening words in Section 82.002(a) would be needless. Although we have not previously held that what matters is not merely whether but *why* a seller is independently liable, this Court has suggested as much: "To escape this duty to indemnify, the indemnitor must prove the indemnitee's independent *culpability*." [25]

Section 82.002(a) exempts from indemnity a seller's own "negligence, intentional

---

16. *Id.* (emphasis added).

17. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 89 (Tex.2001); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999).

18. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex.2006).

19. *Meritor*, 44 S.W.3d at 89; *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999).

20. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003).

21. *Meritor*, 44 S.W.3d at 90; *see also Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex.1998).

22. *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963).

23. *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex.2000).

24. *Meritor*, 44 S.W.3d at 90 (quoting Tex Gov't Code § 311.021(2)).

25. *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 255 (Tex.2006) (emphasis added); *see also Meritor*, 44 S.W.3d at 90 ("In using the phrase 'caused by,' rather than 'allegedly caused by,' the Legislature indicated that a mere allegation that the seller was negligent would not suffice to invoke the exception.").

misconduct," or act "such as negligently modifying or altering the product" for which the seller would be independently liable. Section 82.002(a) does not always exempt losses arising from a contractual indemnity obligation. We express no opinion as to whether a loss need always be tortious to fit within the ambit of Section 82.002(a)—the statute includes "other act[s] or omission[,]" that may not necessarily be tortious. On today's facts, though, K–2 has not conclusively established a loss for which it is exempt from indemnity.

Both the text of Section 82.002(a) and the other provisions of Chapter 82, such as 82.002(e), lead us to conclude that K–2 failed to prove that Fresh Coat's settlement payment to Life Forms was caused by the type of act or omission for which K–2 owes no indemnity under the statutory exception.

### III. Conclusion

Chapter 82's text does not limit "product" to exclude items that may later become part of a house wall. Also, a "seller" under Chapter 82 may include those who sell both products and services, so that a person who contracts to both provide and install a single product may be considered a seller of that product. Finally, we hold that a manufacturer is not exempt from *any* loss for which a seller is independently liable. The statutory exception to indemnity is limited to losses caused by the seller's tortious or otherwise culpable act or omission for which the seller is independently liable. We therefore affirm in part and reverse in part the court of appeals' judgment, and render judgment for Fresh Coat in accord with the trial court's original judgment.