In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00332-CV
_____

CENTERPOINT BUILDERS GP, LLC AND CENTERPOINT BUILDERS,
LTD., Appellants

V.

TRUSSWAY LTD.,
Appellee

On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-183,385

**OPINION**

This is an agreed interlocutory appeal from the trial court's order granting the motion for partial summary judgment filed by appellants and cross-appellees, Centerpoint Builders GP, LLC and Centerpoint Builders, Ltd. ("Centerpoint") as to Centerpoint's status as a "seller," Centerpoint's eligibility to seek indemnity from Trussway, Ltd. and the granting of full summary judgment in favor of Centerpoint as to Trussway's cross-action against Centerpoint for indemnity. *See* Tex. Civ.

1

Prac. & Rem. Code Ann. § 51.014(d)(2) (West Supp. 2013). We reverse the trial court's summary judgment order to the extent it granted partial summary judgment in favor of Centerpoint by determining that Centerpoint is a "seller" under Chapter 82 of the Civil Practice and Remedies Code and concluding that Centerpoint was eligible to seek indemnity. We affirm the portion of the trial court's summary judgment order that granted summary judgment in favor of Centerpoint as to Trussway's cross-claim against Centerpoint for indemnity, and we remand the cause for further proceedings consistent with this opinion.

BACKGROUND

The instant case began as a personal injury action filed by Merced Fernandez against Centerpoint, Trussway, and other defendants for injuries Fernandez sustained while installing drywall at an apartment complex construction project for which Centerpoint was the general contractor and Fernandez was an independent subcontractor. At the time of the injury, Fernandez was attempting to install a piece of drywall above the second story of the building while standing on top of trusses that were lying in a horizontal position and had not yet been installed. Fernandez was injured when he stepped onto a truss that broke and collapsed, causing him to fall approximately eight to ten feet and rendering him a paraplegic. Fernandez contended that the trusses, which were manufactured by

2

Trussway and purchased by Centerpoint directly from Trussway, were defective and unreasonably dangerous.

Trussway filed a cross-action against Centerpoint. In its cross-action, Trussway denied that Centerpoint was a seller under Chapter 82 and Trussway contended that "as an innocent seller, it is entitled to indemnity from Centerpoint under the provisions of Chapter 82[.]" Centerpoint also filed a cross-claim against Trussway seeking indemnity. Both Centerpoint and Trussway ultimately settled with Fernandez.

Trussway filed a traditional motion for summary judgment, in which it contended that Centerpoint was not entitled to indemnity from Trussway under Chapter 82, but did not argue the issue of whether Trussway was entitled to indemnity from Centerpoint. Centerpoint filed a hybrid motion for partial summary judgment as to its cross-action against Trussway, combined with a hybrid motion for summary judgment as to Trussway's cross-action against Centerpoint. The parties entered into joint stipulations of fact. The trial judge signed an order granting Centerpoint's motion for partial summary judgment with respect to whether Centerpoint is a "seller" and is eligible to seek indemnity under Chapter 82, denying Centerpoint's motion for partial summary judgment with respect to Centerpoint's entitlement to indemnity, denying Trussway's motion for summary

judgment, and granting Centerpoint's motion for summary judgment as to Trussway's cross-claim for indemnity. The parties then filed a joint notice of agreed interlocutory appeal.

## STANDARDS OF REVIEW

We review the trial court's summary judgment order *de novo*. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). With a traditional motion for summary judgment, the movant must establish that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P.166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Id.* at 549.

## ISSUES PRESENTED

In its brief as appellant, Centerpoint argues in its sole issue that the trial court erred by denying its motion for partial summary judgment as to its entitlement to Chapter 82 indemnity from Trussway. By cross-appeal, Trussway asserts three issues which challenge the trial court's granting of partial summary judgment in favor of Centerpoint as to Centerpoint's status as a "seller" and its eligibility to seek indemnity from Trussway, as well as the granting of summary judgment as to Trussway's cross-claim against Centerpoint. Specifically, Trussway argues that (1) the Legislature did not intend in Chapter 82 to broaden the scope of defendants entitled to indemnity under the common law, a general contractor is not entitled to indemnity from a manufacturer, and granting Centerpoint the status of a "seller" under Chapter 82 would lead to absurd results "by transforming most premises-liability cases against general contractors [in]to indemnity cases against material suppliers[,]"; (2) a completed custom-built apartment complex is not a "product" under Chapter 82; and (3) a general contractor owes "an offsetting indemnity duty to the material supplier as a manufacturer[.]"

In its motion for summary judgment, Trussway argued that the purpose of Chapter 82 is to provide further protection for innocent sellers who are drawn into litigation solely because of their vicarious liability by shifting the burden of

5

litigation to manufacturers, and the Legislature did not intend to expand the common law to include a general contractor within the definition of "seller." *See GMC v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 260 (Tex. 2006). According to Trussway, Centerpoint only sold construction services; it did not sell trusses, and since "Chapter 82 [did] not expand the scope of who is considered a seller, Centerpoint is . . . not a seller under Chapter 82." In addition, Trussway argued that a custom-built apartment building is not a "product."

Trussway discussed the Texas Supreme Court's opinion in *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893 (Tex. 2010), in which the Court noted that "builders may be held liable as product sellers . . . when they sell prefabricated homes or other cookie-cutter-type homes as part of a large development." *Id.* at 898 n.7. According to Trussway, because the accident occurred during construction, Centerpoint had not sold the truss and could not be held liable as a seller at that point. Trussway contended that although the Texas Supreme Court held that Fresh Coat's installation services did not preclude it from also being a seller and held Fresh Coat liable as a seller for purchasing and installing an allegedly defective stucco-type siding, *Fresh Coat* does not govern the instant case. Trussway further asserted that taking Centerpoint's position to its extreme would lead to absurd results.

As previously discussed, Centerpoint filed a combined motion, in which it sought a partial summary judgment as to its cross-action against Trussway and a full summary judgment as to Trussway's cross-action against Centerpoint. In its motion for partial summary judgment as to its cross-claim against Trussway, Centerpoint argued that (1) the case is clearly a "product liability action" as that term is defined in Chapter 82, and (2) the case is governed by the Supreme Court's holding in *Fresh Coat* that a contractor who installs a product that is a component part of a building is a "seller" as defined in Chapter 82. In Centerpoint's motion for summary judgment as to Trussway's cross-claim against Centerpoint, Centerpoint argued that because it did not assemble the truss in question but the truss instead "was a finished product when delivered" to Centerpoint, Centerpoint does not fit Chapter 82's definition of "manufacturer" and therefore owes no duty of indemnity to Trussway as a matter of law. As explained above, the trial judge signed an order granting Centerpoint's motion for partial summary judgment with respect to whether Centerpoint is a "seller" and entitled to seek indemnity from Trussway under Chapter 82, denying Centerpoint's motion for partial summary judgment with respect to Centerpoint's entitlement to indemnity, and denying Trussway's motion for summary judgment.

This appeal turns on the issue of whether Centerpoint qualifies as a seller under Chapter 82 of the Civil Practice and Remedies Code. Under the common law, a manufacturer was not required to indemnify a seller of its products unless the manufacturer had been judicially determined to have been negligent. *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.*, 251 S.W.3d 481, 483 (Tex. 2008). By enacting Chapter 82, the Legislature supplemented the common law and provided a means for an innocent seller to seek indemnification from the manufacturer of an allegedly defective product. *Id*. at 483-84. Accordingly, we turn to Chapter 82 and the case law construing that statute in analyzing the propriety of the trial court's order on the parties' respective motions for summary judgment.

"Chapter 82 governs a manufacturer's indemnity obligations arising from a 'products liability action.'" *Fresh Coat*, 318 S.W.3d at 896. Section 82.002(a) of the Civil Practice and Remedies Code provides, "A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a) (West 2011). Section 82.001(3) of the Civil Practice and Remedies Code provides that, for purposes of products liability actions, a "seller" is "a person who

8

is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." *Id*. § 82.001(3).

In *Fresh Coat*, the Texas Supreme Court examined "a synthetic stucco manufacturer's duty to indemnify a contractor under Chapter 82 of the Texas Civil Practice and Remedies Code." *Fresh Coat*, 318 S.W.3d at 895. K-2, Inc. manufactured synthetic stucco components ("EIFS"). *Id*. A homebuilder, Life Forms, Inc., entered into a contract with Fresh Coat, Inc. "to install EIFS on the exterior walls of several homes that Life Forms was building." *Id*. Fresh Coat purchased the EIFS and installed it, aided by K-2's instructions and training. *Id*. Approximately ninety homeowners later sued K-2, Life Forms, and Fresh Coat for alleged structural damage, termite problems, and mold caused by water penetration. *Id*. Life Forms sought indemnity from Fresh Coat and K-2, and Fresh Coat sought indemnity from K-2. *Id*. at 896. K-2, Life Forms, and Fresh Coat all settled with the homeowners, the case proceeded to trial on the defendants' cross-claims against each other, and the jury found in favor of Fresh Coat as to all damages Fresh Coat requested. *Id*. On appeal, the issue was Fresh Coat's claims against K-2. *Id*. This Court affirmed the trial court's judgment except with regard to the settlement payment Fresh Coat made to the homebuilder, Life Forms. *Id*.

9

Both K-2 and Fresh Coat filed petitions for review with the Texas Supreme Court. *Id*. In addressing the issue of whether Fresh Coat, the EIFS installer, was a "seller" under Chapter 82, the Supreme Court agreed with this Court's determination that Chapter 82's definition of "seller" does not exclude a seller who is also a service provider, and Chapter 82 does not require the seller to sell only the product. *Id*. at 899. The Supreme Court noted that said approach "is consistent with the Third Restatement of Torts, which recognizes that a product seller may also provide services." *Id*. (citing RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY §§ 19, 20 (1998)). In determining that Fresh Coat was a seller pursuant to Chapter 82, the Supreme Court pointed out that "Fresh Coat installed the EIFS according to K-2's instructions[,]" "K-2 trained and certified Fresh Coat personnel in the installation of its EIFS system[,]" and Fresh Coat's contract with Life Forms was to provide "'labor, services and/or materials, equipment, transportation, or facilities necessary'" to provide "'synthetic stucco application and finish.'" *Id*. The Supreme Court also noted that "Fresh Coat was in the business of providing EIFS products combined with the service of EIFS installation." *Id*. In affirming this Court's judgment as to indemnity for Fresh Coat's settlement with the homeowners, the Supreme Court held as follows:

> Chapter 82, *like the Restatement*, anticipates that a product seller may also provide services. Thus, we conclude that when a company

10

contracts to provide a product that is alleged to be defective – like the EIFS system in this case – the company's installation services *do not preclude it* from also being a seller.

*Id*. (emphasis added).

In the instant case, Centerpoint, as general contractor, entered into a contract with the owner of the apartment complex. The contract defined the term "work" as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment[,] and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The [w]ork may constitute the whole or a part of the [p]roject." Centerpoint hired various subcontractors, one of which was Sandidge & Associates, LLC ("Sandidge"). Centerpoint hired Sandidge to erect wooden trusses, and at the time of the accident, Fernandez was working as an independent contractor of both Sandidge and Maverick Builders, a contractor Centerpoint hired to install sheetrock, drywall, and related materials.

We determine that the case at bar is distinguishable from *Fresh Coat* for several reasons. First, it is undisputed that Fernandez's accident occurred before the trusses were installed at the apartment complex. Unlike *Fresh Coat*, there is no indication that Centerpoint (or its subcontractors) installed the truss pursuant to training or instructions from Trussway. Second, Centerpoint's contract with the

property owner covered innumerable construction products and materials that would be involved in the construction of the apartment complex, as opposed to the contract involved in *Fresh Coat*, in which Fresh Coat merely contracted to install a specific product, the EIFS, from component parts, instructions, and training provided by K-2. *Id*. at 899. Third, although the trusses were made a permanent part of the apartment complex upon completion of construction, we conclude that Centerpoint was not engaged in placing the trusses into the stream of commerce when Fernandez's accident occurred. Fourth, in *Fresh Coat*, the Texas Supreme Court held that Fresh Coat was a seller under Chapter 82 and noted that the company's installation services did not "preclude" it from being a seller; however, the Court did not broadly hold that a contractor who installs a product is always a "seller" for purposes of Chapter 82. *Id*. The Supreme Court discussed the common law and upheld our interpretation of the term "seller" as consistent with the common law. Therefore, we conclude that the Supreme Court did not hold that Chapter 82 expanded the common-law definition of "seller."

We also find instructive the opinion of the Fourteenth Court of Appeals in *F & F Ranch v. Occidental Chem. Corp.*, No. 14-09-00901-CV, 2011 WL 1123402 (Tex. App.—Houston [14th Dist.] Mar. 29, 2011, no pet.) (mem. op.), in which the Court pointed out that in *Fresh Coat*, the indemnitee "actually sold

12

services in which it installed the defective product in accordance with the manufacturer's instructions, and the manufacturer trained and certified the indemnitee's personnel in the installation of the defective product." *Id*. at *4. The Fourteenth Court of Appeals also noted that *Fresh Coat* "clearly holds that the party seeking indemnity must provide the defective product as part of its sales and services[.]" *Id*. at *4 n.8.

For all of the reasons discussed above, we hold that Centerpoint does not fit the statutory definition of a seller; therefore, Centerpoint is not entitled to indemnity from Trussway.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.001(3); *Fresh Coat*, 318 S.W.3d at 895-99. We therefore overrule Centerpoint's sole appellate issue, and we sustain Trussway's first cross-issue, in which Trussway argues that Centerpoint is not a "seller" under Chapter 82. Accordingly, we reverse the trial court's order granting partial summary judgment in favor of Centerpoint as to Centerpoint's alleged status as a seller and Centerpoint's entitlement to seek indemnity from Trussway.

We turn now to Trussway's third cross-issue, in which Trussway contends the trial court erred by granting summary judgment in favor of Centerpoint as to

---

[1]We do not hold that the indemnity provisions of Chapter 82 can never apply to a general contractor at a construction site. Rather, we conclude only that, under the circumstances presented in this record, Centerpoint was not a seller of the truss, and Centerpoint is therefore not entitled to indemnity from Trussway.

13

Trussway's conditional cross-claim. As previously explained, in its cross-action, Trussway denied that Centerpoint was a seller under Chapter 82 of the Texas Civil Practice and Remedies Code, and Trussway contended that as an innocent seller of a component part, it is entitled to indemnity from Centerpoint under Chapter 82.

In a products liability action, the court must look to the allegations in the plaintiff's petition to determine whether the manufacturer's duty to indemnify a seller for costs incurred in products liability litigation under Chapter 82 has been triggered. *Toyota Indus. Equip. Mfg., Inc. v. Carruth-Doggett, Inc.*, 325 S.W.3d 683, 690 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The manufacturer's duty to indemnify is triggered by the pleadings, not by proof of a product defect. *Id.*; *see also Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 91 (Tex. 2001). Fernandez's petition did not allege that a product manufactured or assembled by Centerpoint was defective; rather, Fernandez's petition alleged only that the uninstalled truss manufactured by Trussway was defective, and the parties stipulated that Trussway manufactured and supplied the truss.

We conclude that Centerpoint was not a manufacturer of the truss and, accordingly, is not obligated to indemnify Trussway. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.001(4); *see also generally Hudiburg Chevrolet*, 199 S.W.3d at 252, 257. Accordingly, the trial court did not err by granting summary judgment in

14

favor of Centerpoint as to Trussway's cross-claim. We overrule Trussway's third cross-issue. Because Trussway's second cross-issue[2] would not result in greater relief, we need not address it. *See* Tex. R. App. P. 47.1. We affirm the trial court's granting of summary judgment in favor of Centerpoint as to Trussway's cross-claim against Centerpoint for indemnity. We remand the cause to the trial court for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

_____

STEVE McKEITHEN
Chief Justice

Submitted on April 24, 2014
Opinion Delivered July 10, 2014

Before McKeithen, C.J., Kreger and Johnson, JJ.

---

[2]In cross-issue two, Trussway argues that a custom-built apartment complex is not a "product" under Chapter 82.