

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00188-CV

JACK COUNTY APPRAISAL
DISTRICT

APPELLANT

V.

JACK COUNTY HOSPITAL
DISTRICT

APPELLEE

----------

FROM THE 271ST DISTRICT COURT OF JACK COUNTY
TRIAL COURT NO. 13-07-097

----------

## DISSENTING OPINION

----------

I must dissent from the majority's careful and thorough opinion. Based on the plain language of the contract between Provident Leasing and appellee Jack County Hospital District, they did not enter into a lease-purchase agreement, which vitiates the Hospital District's entitlement to the tax exemption.

The majority correctly recognizes that the Hospital District bore the burden of proof to show it was entitled to the tax exemption provided in tax code section 11.11(a) and that we must strictly construe the exemption in favor of appellant Jack County Appraisal District. *See* Tex. Tax Code Ann. § 11.11(a) (West 2015). Similarly, it appears that the majority implicitly concludes section 11.11(a) is unambiguous, and I agree. I further agree that we are to presume that the entirety of section 11.11 is intended to be effective when read as a whole. But because section 11.11(a) is unambiguous, we may not refer to "extrinsic aides such as legislative history" in interpreting it. *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 137 (Tex. 2013); *see Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013); *see also* Ron Beal, *The Art of Statutory Construction: Texas Style*, 64 Baylor L. Rev. 339, 364 & n.157 (2012) (citing cases and stating "[i]f the disputed statute is clear and unambiguous, extrinsic aids and canons of construction are inappropriate, and the statute should be given its common, everyday meaning"). Therefore, we are to look to the plain language of the statute in divining the legislature's intent, which is our primary objective in statutory interpretation. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010). This plain-language approach does allow, however, reference to the common, ordinary meaning of any undefined, statutory term. *See TGS-NOPEC*, 340 S.W.3d at 439; Beal, *supra*, at 366. To the extent the majority relies on legislative history or other extratextual aids to interpret

2

section 11.11(a) as it applies to the Hospital District's claims, I disagree. *See generally* Adele Hedges & Garrett Gibson, *"Taking the Legislature at its Word": The Role of Legislative History in Statutory Construction in Texas*, 71 The Advoc. (Tex.) 13, 14–16 (discussing plain-language rule of statutory construction and noting "[t]he Texas Supreme Court has clearly adopted, at least in concept, the preeminence of the plain[-]language rule whenever possible").

As the majority recites, the tax exemption applies only if the Hospital District and Provident Leasing's contract regarding the CT scanner was "a lease-purchase agreement providing that [the Hospital District] is entitled to compel delivery of the legal title to the property to [the Hospital District] at the end of the lease term." Tex. Tax Code Ann. § 11.11(h). The contract clearly states that it is a finance lease as defined by California law, not a lease-purchase agreement.[1] California, like Texas, has adopted the Uniform Commercial Code (the UCC), which defines a finance lease, as relevant here, as one in which (1) the lessor does not select, manufacture, or supply the goods; (2) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and (3) the lessor tells the lessee before the lease is signed the identity of the supplier, the lessee's rights under the lessor's contract with the supplier, and

---

[1]The contract states it is "a 'Finance Lease' as defined in, and for the purposes only of Division 10 of the California Commercial Code and not necessarily for any accounting purpose or otherwise." Division 10 is entitled "Personal Property Leases" and applies "to any transaction, regardless of form, that creates a lease." Cal. Com. Code § 10102.

the lessee's right to contact the supplier for a description of any such rights. *See* Cal. Com. Code § 10103(a)(7); *see also Arriaga v. CitiCapital Commercial Corp.*, 85 Cal. Rptr. 3d 143, 150–51 (Cal. Ct. App. 2008) (recognizing California adopted the UCC and discussing definition of finance lease in section 10103); *accord* Tex. Bus. & Com. Code Ann. § 2A.103(a)(7) (West 2009) (defining finance lease as in the UCC). *See generally Lease*, Black's Law Dictionary (10th ed. 2014) (defining finance lease by reference to the UCC definition and noting such leases "strongly resemble security agreements"). The contract between Provident Leasing and the Hospital District not only states it is a finance lease but also clearly falls within the statutory definition of a finance lease by its terms.

In contrast, a lease-purchase agreement is commonly defined as "[a] rent-to-own purchase plan under which the buyer takes possession of the goods with the first payment and takes ownership with the final payment." *Lease-Purchase Agreement*, Black's Law Dictionary. This common and ordinary definition of a lease-purchase agreement informs the meaning of the statutory tax exemption as applied to the Hospital District. In a true lease-purchase agreement, the lease payments are applied to the purchase price; therefore, the lessee would have the absolute right to compel transfer of title at the end of the lease term. Here, nothing in the contract allows any lease payments made by the Hospital District to be credited toward any possible, future purchase of the CT scanner. Additionally, the Hospital District had no right to *compel* transfer of the CT scanner's title at the end of the lease period as required for the exemption. The

4

Hospital District could merely enter into negotiations for a purchase price if it determined at its discretion that it wanted to purchase the CT scanner at the end of the lease term: "Lessee *may* purchase, or renew this Lease for [the CT scanner], provided Lessee is not in default and upon proper written notification to Lessor, as of the expiration of the Term . . . . [T]he purchase price shall be the 'Fair Market Value' of the Equipment." [Emphasis added.] The Hospital District also had the options to extend the lease term or to allow the lease to end and return the CT scanner to Provident Leasing at the end of the lease term. The Hospital District's contractual options to enter into purchase negotiations to pay the agreed fair market value for the CT scanner, to renew the lease, or to terminate the lease and return the CT scanner to Provident Leasing do not equate to a right to compel transfer of title from Provident Leasing at the end of the lease term. Therefore, the contract between the Hospital District and Provident Leasing was a finance lease, not a lease-purchase agreement, and the Hospital District could not claim a tax exemption under section 11.11(a) because its contract did not confer upon it the requisite ownership interest in the CT scanner.

Further, a lease-purchase agreement requiring no additional payment, or only a nominal payment, at the end of the lease term in order for ownership to transfer to the lessee grants the lessee an ownership interest or equity in the equipment; thus, it creates a security interest. Cal. Com. Code § 1203; *accord* Tex. Bus. & Com. Code Ann. § 1.203 (West 2009). By using the term "lease-

5

purchase agreement" and mandating that the political subdivision must have the right to compel transfer of title at the end of the lease term, the legislature clearly showed that it was referring to a lease-purchase agreement creating a security interest, which is identified by the lessee's option to buy the equipment at the end of the lease term "for no additional consideration or for nominal additional consideration." Tex. Bus. & Com. Code Ann. § 1.203(b)(4); *see also id.* § 9.103 (West 2011) (defining "purchase-money security interest"). Fair market value of the equipment at the time of the option is not nominal consideration. *Id.* § 1.203(d)(2). Therefore, the tax exemption applies if the lease-purchase agreement created a security interest, which the lease between the Hospital District and Provident Leasing did not. Indeed, the terms of the finance lease between the Hospital District and Provident Leasing had all the hallmarks of a finance lease and did not create a security interest, which falls outside of the terms of the tax exemption as stated by the legislature. *See id.* § 1.203.

I further disagree with the majority's conclusion that this interpretation of the right to compel title would render the remainder of the tax-exemption statute meaningless. The final sentence of section 11.11(h) states that the property ceases to qualify for tax-exempt status as property owned by the political subdivision under a lease-purchase agreement if the political subdivision does not "exercise its right to acquire legal title to the property." Tex. Tax Code Ann. § 11.11(h). The majority states that if title must pass automatically at the end of the lease term to qualify as a lease-purchase agreement, there would be no right

6

for the Hospital District to exercise to acquire legal title to the CT scanner: "If title passed automatically, there would be no right to exercise by the thirtieth day after the termination of the lease." Even if the right of ownership, or equitable title, automatically passes to a lessee at the end of a lease term, the lessee would be required to request, or compel, the delivery of legal title under the terms of its lease-purchase agreement with the lessor. *See Neeley v. Intercity Mgmt. Corp.*, 623 S.W.2d 942, 950–51 (Tex. App.—Houston [1st Dist.] 1981, no writ) (defining "equitable title" as an enforceable right to have legal title transferred to holder of equity). Indeed, in that instance, the lessee in a lease-purchase agreement would have the right to compel delivery of legal title as contemplated by section 11.11(h) because the lessee gained equitable title at the end of the lease term by virtue of its compliance with the terms of the lease-purchase agreement. If the lessee does not do so for whatever reason, the property's tax-exempt status would end thirty days after the expiration of the lease term. Thus, these two sentences of section 11.11(h) may be read together without rendering one meaningless. I respectfully believe that the majority's construction of the finance lease between the Hospital District and Provident Leasing as conferring on the Hospital District the right to compel delivery of title at the end of the lease term under section 11.11(h) changes the common meaning of the term "compel" and would have the effect of equating the right to compel to the Hospital District's exercise of its contractual option to attempt to negotiate a fair-market-value purchase price. *Compare Compel*, Black's Law Dictionary (defining compel as

7

"[t]o cause or bring about by force, . . . or overwhelming pressure" or "to convince . . . that there is only one possible resolution"), *with Negotiate*, Black's Law Dictionary (defining negotiate as "[t]o communicate with another party for the purpose of reaching an understanding").

Strictly construing the tax exemption in light of the contract between Provident Leasing and the Hospital District, I conclude that the Hospital District failed to carry its burden to show it was entitled to the exemption because its contract with Provident Leasing by its terms was not a lease-purchase agreement as contemplated by section 11.11(h). Thus, I would hold that the trial court's summary judgment on that basis was improper and would address whether the Hospital District's remaining grounds for summary judgment provided a legal basis upon which to uphold the trial court's summary-judgment order and, if not, whether the Appraisal District established its right to summary judgment. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2008); *Comm'rs Ct. of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). Because the majority does not, I respectfully dissent.


/s/ Lee Gabriel
LEE GABRIEL
JUSTICE

DELIVERED:  January 14, 2016

8